MICHAEL C. SHESKEY vs. BARBARA ANN SHESKEY
(and a companion case[1]).

Plymouth.  May 10, 1983. — June 13, 1983.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Divorce and Separation,* Division of property.

Where the judge in a divorce case, in making a division of property under
G. L. c. 208, § 34, had failed to consider the income tax consequences
of early withdrawals from the husband's interest in a pension plan, de-
spite a request by the husband's counsel that tax effects be considered
and the introduction of evidence relevant to the tax issues, this court
remanded the case to the probate judge for reconsideration of his
orders for payments and division of property in light of the income tax
consequences of early withdrawals from the pension plan with a view
to minimizing adverse tax consequences.  [160-162]

COMPLAINTS for divorce filed in the Plymouth Division of
the Probate and Family Court Department on March 22
and April 27, 1979, respectively.

The cases were heard by *Murphy,* J.

*Allan R. Curhan (Joan Davenport* with him) for Michael
C. Sheskey.

*Stephen G. Carreiro* for Barbara Ann Sheskey.

KASS, J.  Unlike the circumstances in *Bennett* v. *Bennett,*
15 Mass. App. Ct. 999 (1983), Dr. Sheskey's lawyer in the
instant divorce action timely requested the Probate Court
judge to consider the tax effects upon Dr. Sheskey of bor-
rowing or distributions from a pension plan established by a
corporation (Pilgrim Anesthesia Services, Inc. [Pilgrim])
which Dr. Sheskey substantially controlled.  Evidence rele-
vant to those tax issues was introduced on behalf of Dr.
Sheskey, thus filling another gap which was present in the
*Bennett* case.

---

[1] The companion case is between the same parties.

Dr. Sheskey is an anesthesiologist who, at the times material, received the preponderance of his compensation from Brigham and Women's Hospital and the Brigham and Women's Anesthesia Foundation. He is the sole stockholder and director of Pilgrim which, however, became inactive when Dr. Sheskey affiliated in the summer of 1979 with Brigham and Women's Hospital. So far as appears from the record, Pilgrim has not been dissolved, and Dr. Sheskey may continue to have the status of an employee of Pilgrim for purposes of the pension plan and trust (§ 1.2[e] of the instrument which created the pension plan trust permits retention of employee status for an authorized leave of absence).

In estimating the marital estate of Dr. and Mrs. Sheskey for purposes of making an equitable division of property under G. L. c. 208, § 34, the judge ascribed a fair market value of $240,000 to Dr. Sheskey's interest in the pension plan without regard to the income tax consequences of early withdrawals from the pension plan.[2] Taking into account the pension trust, the judge calculated a combined net worth of the parties of $299,425 and ordered that Sheskey pay to Mrs. Sheskey $164,683.75 by January 2, 1985.

About 92% of the balance of the pension plan fund was credited to Dr. Sheskey. In *Bennett* v. *Bennett*, 15 Mass. App. Ct. at 1000, which dealt, among other things, with access to a pension and profit sharing plan in which, as here, the husband had much the dominant interest, we observed that "tax consequences are likely to be of great importance in a case where the availability of income to be divided may

[2] The source of the $240,000 figure is not clear. On cross-examination Dr. Sheskey had been asked if the assets held by the pension trust "were about $220,000?" He answered, "Could possibly be, yes." The only statement of account of the pension trust which appeared in the record was dated March 31, 1981, and shows a balance of $219,558.63. On recross-examination, Dr. Sheskey was asked if he had testified that the fund balance was $240,000. He adopted that suggestion. Exhibit no. 9 in the case is a statement of the accounts of the three employees of Pilgrim. That shows $238,927.57 credited to Dr. Sheskey and may be the basis of the court's finding.

depend upon the tax consequences of somewhat sophisticated estate planning arrangements." See *Rice* v. *Rice*, 372 Mass. 398, 402 n.4 (1977), and *Angelone* v. *Angelone*, 9 Mass. App. Ct. 728, 732 (1980), in which the absence of evidence as to tax consequences was called to attention, thus recognizing the pertinence of the issue if properly preserved. See also Freedman & Musko, General Laws Chapter 208, Section 34 and the Internal Revenue Code, 24 B.B.J. (No. 2) 15 (1980), which discusses the authorities and emphasizes the advisability of obtaining the assistance of specialists in taxation. Our opinion in *Bennett* recognizes that resources deposited in a qualified pension or profitsharing plan are assets which a court may take into account in making an equitable division of marital assets. How useful such assets will be to a fair division in terms of dollars will depend on the degree of control the spouse has over the plan, the terms of the plan (the vesting provisions will have a bearing on the beneficiary's ability to reach his share), and what the tax bite will be as a consequence of a distribution or loan. Internal Revenue Code § 72(p)(1) & (2)(A) (West Supp. 1967-1982) (as appearing in Pub. L. No. 97-248, § 236[a]), provides that a loan from a qualified employer plan will be treated as income if it exceeds the lesser of $50,000 or one half of the present value of the nonforfeitable accrued benefit of the employee under the plan. For examples where courts have approved consideration of interests in an employee plan see *In re Marriage of Brown*, 15 Cal. 3d 838, 841-842, 847 (1976) (nonvested pension); *Ohm* v. *Ohm*, 49 Md. App. 392, 395-403 (1981); *Elliott* v. *Elliott*, 274 N.W.2d 75, 77 (Minn. 1978); *In re Marriage of Powers*, 527 S.W.2d 949, 957 (Mo. Ct. App. 1975) (profit sharing plan). See also *In re Marriage of Rogers & Rogers*, 45 Or. App. 885, 893, which was modified, 47 Or. App. 963 (1980), in order to consider tax consequences. Compare *Leighton* v. *Leighton*, 81 Wis. 2d 620, 634-637 (1978) (pension or profit sharing plan benefits would be considered in division of marital estate, but disability pension benefits to be excluded from marital estate, although may be taken into account

for purposes of calculating ability to make periodic payments). See generally Annot., Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3d 176 (1979).

In the instant case there were affidavits and testimony of Mr. Edward E. Plaisted, a lawyer and certified public accountant who specializes in tax law, about the increased tax liability of the Sheskeys should Dr. Sheskey's share in the trust be drawn down. Mr. Plaisted's calculations were for the years 1979 and 1980 and assumed the ability of Dr. Sheskey in 1980 to draw down an amount, $159,173, substantially less than the $240,000 assumed by the judge. A withdrawal of $159,173 in 1980, according to Mr. Plaisted, would have resulted in a tax increase of $104,100 in State and Federal taxes. It does not appear from the findings of the judge that the impact of taxes was given consideration by the judge. No reference whatever to taxes appears in those findings.

We, therefore, vacate so much of the judgments as deal with orders for payments and division of property under G. L. c. 208, § 34, and remand the cases to the Probate Court for careful reconsideration of the awards, in light of the income tax consequences to Dr. Sheskey of any borrowings or drawings from his interest in the pension trust, and with a view to minimizing unnecessary adverse income tax consequences. In framing a new order, it may be advisable for the judge to consider Dr. Sheskey's ability to borrow $50,000 from the pension trust, whether he can pay enhanced periodic alimony payments in lieu of the lump sum previously ordered, whether and to what extent Dr. Sheskey's change of his professional activities to a new location may have affected his interest in the now inactive Pilgrim, and whether other means exist by which to fund a share of the marital estate which may be determined by the judge to be fairly allocable to Mrs. Sheskey. The Probate Court may, in its discretion, receive evidence (offered by the parties) from tax and estate planning specialists as to the most expedient means of achieving an appropriate allocation.

*So ordered.*