MILTON A. WOLFE *vs*. BERNICE E. WOLFE.

Norfolk.   November 8, 1985. — December 17, 1985.

Present: GRANT, CUTTER, & FINE, JJ.

*Trust*, Revocable trust, Spendthrift trust. *Divorce and Separation*, Alimony,
    Division of property.

Where a settlor of a revocable trust had the absolute right and power to
    withdraw up to five-sixths of the trust corpus for his own use and benefit,
    the corpus could be invaded to that extent in order to meet payments
    due from the settlor to his former wife pursuant to a probate judge's
    order under G. L. c. 208, § 34, and it was not necessary that the judge
    specify the source of the ordered payments. [257]

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on June 10, 1983.

The case was heard by *Robert M. Ford*, J.

*Emmanuel N. Papanickolas* for the plaintiff.

*David P. Witman* (*Michael S. Avratin* with him) for the
defendant.

CUTTER, J.  A probate judge granted Milton A. Wolfe (Mil-
ton) and his wife (Bernice) a divorce on the ground of an
irretrievable breakdown of their marriage. He, among other
actions, awarded Bernice alimony of $225 each week for six
years from October 19, 1984, and $130,000 "forthwith as lump
sum alimony." The judge also made other divisions of property
which do not appear now to be disputed. This appeal by Milton
is said by him to be "based on [allegedly] insufficient personal
assets . . . to satisfy" the judge's "order of lump sum alimony
in the amount of" $130,000 without invading the assets of a
revocable trust (the 1982 trust), dated January 26, 1982, created
by Milton and his mother, Marcia Wolfe Drees (Mrs. Drees).[1]

---

[1] On December 30, 1960, Milton's father, Arthur Wolfe, had created a
real estate trust (the Arthur Wolfe trust) to hold real estate for the benefit

The settlors and cotrustees of the 1982 trust were Milton and his mother. The trust corpus included real estate at 990 Washington Street, Boston, which had been part of the Arthur Wolfe trust's property. This land on July 26, 1982, was conveyed by Milton, as surviving trustee of the Arthur Wolfe trust, to himself and his mother "as joint tenants and not as tenants in common." The deed confirmed earlier deeds (apparently of January 26, 1982) to them, individually and as trustees, from Milton, individually and as trustee.[2]

The 1982 trust provided that, during Milton's life, the trustees were to pay or apply for Milton all the net income of the trust and "may pay to or apply for" Milton such sums of principal "as in their sole discretion shall be necessary or advisable." The 1982 trust further provided that "[e]ach [s]ettlor may at any time during his or her lifetime withdraw all or any part of their respective transfers to the principal of" the trust. On Milton's death "the trust [e]state" was to be used to meet the expenses of the administration of his estate, debts, and death taxes so far as needed and any balance remaining was to be paid to his two sons in equal shares.

---

of Arthur Wolfe and Milton as equal cobeneficiaries. Arthur Wolfe, Milton, and Charles O. Monahan were the original trustees. Of these trustees Milton is the sole survivor. The Arthur Wolfe trust was to terminate twenty years after its creation, when the trustees were to distribute the trust assets to the then beneficiaries. Arthur died intestate in 1965. Milton then succeeded to two thirds of his father's beneficial half-share of the assets of the Arthur Wolfe trust. His mother, Mrs. Drees, succeeded to one-third of Arthur Wolfe's share of those assets. Thus, when the assets of the Arthur Wolfe Trust were distributed in 1982, Milton (who had owned one-half the beneficial interest in that trust from its inception) had become the beneficial owner of five-sixths of all the Arthur Wolfe trust assets. His mother had become the beneficiary of one-sixth of all those assets.

[2] The judge, on evidence, in part oral, and not fully before us, found that the distribution of the land by Milton, as trustee of the Arthur Wolfe trust, on January 26, 1982, "with no designation of the percentage of ownership" was "clearly contrary to the terms of . . . [that] trust." The judge also found (warrantably in view of the evidence and the instruments) that Milton contributed five-sixths of the corpus of the 1982 trust and that Mrs. Drees contributed one-sixth. This decision was consistent with the beneficial interests in the Arthur Wolfe trust when the 1982 trust was created.

The settlors of the 1982 trust retained a broad power to revoke or amend the trust. Upon revocation, "to the extent that it is revoked," the accumulated income and principal was to be paid to Milton. The 1982 trust (art. VIII) contained a spendthrift provision set out in the margin.[3]

The judge found that Milton and Bernice had been separated for about two years when Milton and his mother conveyed the corpus of the Arthur Wolfe trust to themselves as trustees of the 1982 trust. Milton filed for divorce in June, 1983. The real estate owned by the 1982 trust was conveyed to a purchaser in September, 1982, for $625,000, of which $60,000 was paid directly to Wolfe Tire Company, an incorporated business conducted by the Wolfe family.[4] The judge found that the 1982 trust had a fair market value of about $437,000 as of August, 1984.

On the facts thus found, essentially as stated above, the judge concluded that Milton "has the absolute right and power to withdraw 5/6ths of the . . . [1982 t]rust corpus for his own use and benefit, free of trust, at any time." He also ruled that Milton "should not be allowed to set up either the [1982] trust itself or the spendthrift provision of the trust he was responsible for creating,[5] at a time when he was involved in significant

---

[3] Article VIII reads, "To the extent allowed by the law the interest of any beneficiary in the corpus or income of this [t]rust shall not be subject to assignment, alienation, pledge, attachment, of claims or creditors, and may not otherwise be voluntarily or involuntarily alienated or incumbered by the beneficiaries."

[4] The judge determined that the corporation's 100 shares were owned, fifty-nine by Milton, thirty-seven by Mrs. Drees, and four by Bernice. The corporation, at the time of trial, owed to the 1982 trust $72,000 for prior loans, which had been made to it for various reasons. The property at 990 Washington Street, which had been an asset of the Arthur Wolfe Trust and also of the 1982 trust, had been used by the corporation as a place of business. The 1982 trust contains no express indication that it was formed for the purpose of giving support or financing assistance to the Wolfe Tire Company.

[5] Another provision of the 1982 trust shows an additional reason for treating Milton as in control of that trust. Article V provided that both trustees, during Milton's life, were "to have equal responsibilities as to . . . investment matters referred to in this [t]rust" but that Milton was to "have

marital discord and was contemplating divorce, as a bar to an equitable division of the marital estate or to the payment of alimony in a reasonable amount." He distinguished *Sullivan* v. *Burkin,* 390 Mass. 864 (1984), and *Kerwin* v. *Donaghy,* 317 Mass. 559 (1945), on the ground that the settlor involved in each of those cases was dead at the time that controversy arose about the enforceability of the revocable trust discussed in these cases, respectively. The judge recognized that the 1982 trust was created before the 1984 decision in the *Sullivan* case (at 870-873) prospectively overruled the *Kerwin* case, but (at 872 n. 6) expressly distinguished essentially the situation now before us.

1. Neither the *Sullivan* case nor the *Kerwin* case controls the only issue argued on appeal in the present case, viz., "[w]hether the principal of . . . [the 1982] trust . . . [may] be invaded to satisfy . . . payment[s] to" Bernice under G. L. c. 208, § 34. We hold that such an invasion properly may be necessitated by an order under § 34, even though the probate judge need not undertake to direct specifically what the source of the ordered payments shall be. See *Krokyn* v. *Krokyn,* 378 Mass. 206, 213-214 (1979).

The probate judge was correct in concluding that Milton sufficiently created the 1982 trust for his exclusive benefit during his life. Accordingly, Bernice now can reach the maximum amount which (at his request or otherwise) may be reached by, or paid to, Milton under the terms of that trust. It has long been established that creditors can reach such a settlor's trust to that extent. See *Ware* v. *Gulda,* 331 Mass. 68, 70 (1954); *State Street Bank & Trust Co.* v. *Reiser,* 7 Mass. App. Ct. 633, 636 (1979); Restatement (Second) of Trusts, §§ 156 and 157 (1959); Scott, Trusts, §§ 156-157 (3d ed. 1967 & Supp. 1985).[6]

---

. . . sole responsibility for the supervision and character of the investments of the [t]rust [e]state" and for various other decisions. The other trustee was to "have no duty to acquaint itself [*sic*] with the" trust investments and "no liability with respect to losses incurred by the administration of the [t]rust [e]state by Milton."

[6] Compare *Bucknam* v. *Bucknam,* 294 Mass. 214, 217-220 (1936, where the trust considered was not created by the beneficiary); *Burrage* v. *Buck-*

2. Milton in his brief makes some suggestion that the Arthur Wolfe trust need not have been terminated at the expiration of its stated twenty-year term because the purpose of the settlors of that trust had not been accomplished completely. Little in that trust or in the small portions of the evidence reproduced in the record gives indication of the nature of that purpose. We think that the judge correctly in effect treated (a) the Arthur Wolfe trust as tardily terminated, see Scott, Trusts, § 334, *supra,* and (b) the 1982 trust as a completely new disposition.

3. At the arguments there was some discussion of the income tax consequences of the cash award made by the judge in his order. Tax matters, however, are not argued in the briefs[7] and the record does not suggest that any contentions on the subject were presented to the trial judge or were wrongly decided by him. We do not consider them.

*Judgment affirmed.*

---

*nam,* 301 Mass. 235, 238-240 (1938, same); *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 18-22 (1980). There is no occasion to consider in this case whether certain principles stated in these decisions will survive the current broadened interpretation of G. L. c. 208, § 34. See discussion in *Davidson* v. *Davidson,* 19 Mass. App. Ct. 364, 368-373 (1985), and authorities cited.

[7] This court has suggested in earlier decisions the importance of consideration of the tax consequences of divorce and of the division of property and payments incident thereto. See e.g., *Sheskey* v. *Sheskey,* 16 Mass. App. Ct. 159, 160-162 (1983), and authorities cited; *Cabot* v. *Cabot,* 18 Mass. App. Ct. 903, 905-906 (1984). The Federal and State tax problems may be significant. See Kindregan, Non-Statutory Factors in Property Divisions in a Divorce Case, 68 Mass. L. Rev. 194, 196 (1983). See, for a general overview of pertinent tax issues, Rabkin & Johnson, Federal Income, Estate, and Gift Taxes, § 5.06-5.11 (1985). Such issues should be raised in timely form in the trial court and supported by appropriate evidence in the record. See *Bennett* v. *Bennett,* 15 Mass. App. Ct. 999, 1000 (1983). If the parties in this case conclude that modifications of the present judgment may be of mutual advantage because of tax reasons, recourse may be sought in the Probate and Family Court.