**In re David H. COWLES, Debtor.**

**Bankruptcy No. 90–13293–HAL.**

United States Bankruptcy Court,
D. Massachusetts.

July 17, 1992.

**6**

Sumner Bauman, Bauman and Bauman, P.C., Canton, Mass., for creditor.

Leonard M. Salter, Wasserman & Salter, Boston, Mass., for debtor.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### I. INTRODUCTION

Elsie J. Hagberg ("Hagberg"), an unsecured creditor of David H. Cowles ("Cowles" or the "Debtor"), objects to the Debtor's Chapter 13 plan which provides for a 10% dividend to all unsecured creditors. Hagberg maintains that the Debtor's interest in a trust is tantamount to complete ownership, and since the Debtor's plan does not provide for a dividend based upon the full value of the trust res, it cannot be confirmed. Upon consideration of the pleadings and relevant statutory and case law, the Court finds that Hagberg's objection is sustainable and that the entire net equity in the property must be made available for satisfaction of the creditors' claims.

### II. FACTS

Prior to November 15, 1978, Cowles and his wife owned a single family home, located at 6 Reservoir Circle, Canton, Massachusetts, as tenants by the entirety. On that date, they conveyed that property to the Cowles Family Trust, a trust that was established by the Debtor and recorded in the Plymouth Registry of Deeds for the Commonwealth of Massachusetts. The trust instrument names the Debtor's wife and child as beneficiaries and identifies the Debtor as the sole trustee. At the time of the conveyance the Debtor was not insolvent. Hagberg does not allege that the conveyance was made with the intent to defraud creditors.

The Debtor filed a Chapter 13 bankruptcy petition on June 21, 1990. The parties have stipulated that the value of the real estate as of the commencement of the case was $181,000, though an appraiser's report put that value at a slightly higher figure, and the deputy assessor of the town of Canton placed the value at $214,500. As of

December 11, 1991, the parties filed a stipulation in which they agreed that the total outstanding encumbrances on the real estate totalled nearly $87,000. If the stipulated value of the trust property is correct, then the equity in the property that would be available for unsecured creditors after the payment of real estate taxes and secured debt is approximately $94,000. Obviously, if liquidation values are used the net equity would be significantly less.

Hagberg holds an unsecured claim of approximately $85,000, while the Debtor's other non-priority, unsecured obligations, according to his schedules filed in June of 1990, total approximately $4,500. Notably, the Debtor's schedules list the secured and tax debt outlined above. Through his 60 month plan, which was confirmed on January 31, 1991 without prejudice to Hagberg's right to press her objection, the Debtor is making monthly payments of $195 to the Chapter 13 trustee. The Debtor maintains that this sum is warranted since he has accounted for a one-half interest in the trust res, which he values for plan purposes at $100,000 subject to the existing encumbrances. The Debtor's plan provides for only a 10% dividend to the unsecured creditors, including Hagberg. Hagberg objects to the plan, asserting that the entire trust res should be part of the bankruptcy estate, and that creditors would therefore receive more in a Chapter 7 distribution.

## III. ISSUES

The primary issue before the Court is what interest, if any, the Debtor's estate has in the property held in trust. If the trustee of the Debtor's estate cannot reach and apply any portion of the trust assets, the Chapter 13 plan is confirmable, as it provides creditors with more than a Chapter 7 distribution would provide. If the Court determines that the trustee can reach and apply the trust assets, the next question is what portion of the assets is available for creditors. If the entire trust corpus must be made available to satisfy the claims of the creditors, then the plan cannot be confirmed. *See* 11 U.S.C. § 1325(a)(4).

## IV. DISCUSSION

■ The Third Article of the Cowles. Family Trust gives the Debtor, as "Donor" of the trust, the powers to revoke, alter or amend the trust, as well as the powers to change the identity and number of trustees and beneficiaries and to withdraw any part or all of the property of the trust. However, since the beneficial interest in the trust has been assigned to his spouse and child, the Debtor claims that creditors cannot touch the trust property.

The Bankruptcy Code provides that the bankruptcy estate shall include all legal and equitable interests of the debtor in property as of the commencement of the proceeding. 11 U.S.C. § 541(a)(1). It further provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of an equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). Several courts have found that "[w]here the debtor, 'in one capacity or another' dominates all aspects of the trust to the extent that he exercises absolute dominion and control over the assets, his interest in the trust ... constitute[s] property of the estate." *In re Steffan*, 97 B.R. 741, 745 (Bankr.N.D.N.Y. 1989), *quoting In re Gifford*, 93 B.R. 636, 637 (Bankr.N.D.Ind.1988). However, the Court of Appeal for the First Circuit in *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7 (1st Cir.1981), held that since a power of revocation under Massachusetts law is not considered property and cannot be reached by creditors, *see National Shawmut Bank of Boston v. Joy*, 315 Mass. 457, 53 N.E.2d 113 (1944), a suit against the donor/trustee of a revocable real estate trust whose beneficiaries were the donor's children, could not be affected by the donor's discharge in bankruptcy. The court emphasized that the property to which the donor/trustee held legal title was outside

the bankruptcy jurisdiction. Accordingly, the court refused to enjoin a law suit arising out of a contract for improvements to the trust property in which the plaintiff sought recovery only against the trust res. In view of this authority, the issue presently before the Court is more appropriately resolved with reference to the trustee's powers under the so-called "strongarm" clause. *See* 11 U.S.C. § 544(a).[1] If a trustee is successful in bringing an action under section 544, then section 541(a)(3) provides that any property recovered under section 550 by the trustee becomes property of the estate. *See* 11 U.S.C. § 541(a)(3).

The resolution of the issue before the Court is controlled by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, a review of recent Massachusetts decisions is warranted. An often cited Massachusetts case supports the view that, if a settlor has retained a power of revocation over trust assets, those assets should be subject to the claims of creditors. *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App. 633, 389 N.E.2d 768 (1979). In *Reiser*, the Massachusetts Appeals Court held that the assets of the revocable trust could be used to satisfy claims of a deceased settlor's creditors. The court dealt with a situation in which the settlor's estate had insufficient assets to pay the entire indebtedness due a creditor. Acknowledging that the settlor's inter vivos trust was not employed in fraud of creditors, the court permitted the settlor's creditors to satisfy their claims from the assets of the trust. The court concluded that trust assets over which a person maintains control for personal benefit during his life will be liable for the debts of such person to the extent not satisfied from the person's estate. *Id.* at 637, 389 N.E.2d 768. The court adopted the analogy that the debtor's power of revocation

was like a general power of appointment, allowing attachment:

> [A]s to property which a person could appoint to himself or his executors, the property could have been devoted to the payment of debts and, therefore, creditors have an equitable right to reach that property. It taxes the imagination to invent reasons why the same analysis and policy should not apply to trust property over which the settlor retains dominion at least as great as a power of appointment.

*Id.*

The debtor attempts to distinguish *Reiser* from the facts at hand on the ground that *Reiser* dealt with an individual who was also the beneficiary of the trust, while in the present case the Debtor's wife and son are the only beneficiaries. A more recent Massachusetts decision renders this distinction moot.

In *ITT Commercial Finance Corp. v. Stockdale*, 25 Mass.App. 986, 521 N.E.2d 417 (1988), the Massachusetts Appeals Court expanded the holding of *Reiser*, stating that even if the debtor/trustee were not a beneficiary of the trust, the powers that the debtor/trustee held, namely amendment and revocation of the trust and substitution of beneficiaries, were sufficient to warrant allowing creditors to reach the trust property. *Id.* at 987, 521 N.E.2d 417.

Neither of these cases affects the holding in *Guthrie v. Canty*, 315 Mass. 726, 53 N.E.2d 1009 (1944), in which a settlor of a trust who reserved the power to amend or revoke the trust was not required to exercise the power to revoke in order to satisfy the claim of a creditor. However, *Guthrie* and the First Circuit case discussed above can be distinguished from the appeals court cases and the instant case. In the appeals court cases, but particularly in the instant

---

**1.** Section 544(a) provides in relevant part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, *the rights and powers of,* or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists. . . .

11 U.S.C. § 544(a).

case, the powers retained by the trustee were expansive. In the present case, not only does the Debtor/settlor retain a power to revoke or amend, he retains the power to change the identity and number of beneficiaries. The clear import of the recent Massachusetts cases is to look at the indicia of ownership and not the form in which the property is held. Consequently, although the Court recognizes that the instant case is in fact different than *Reiser* and *Stockdale* in that the Debtor does not have any beneficial interest in the trust, the Court finds that his ability to provide himself with such an interest, as well as the fact that the Debtor and his wife and child live in the family home, mandate the conclusion that a state court would permit his creditors to reach the beneficial interest in the trust. As the court stated in *Reiser:*

> Traditionally the courts of this Commonwealth have always given full effect to inter vivos trusts, notwithstanding retention of powers to amend and revoke during life, even though this resulted in disinheritance of a spouse or children and nullified the policy which allows a spouse to waive the will and claim a statutory share.... It might then be argued that a creditor ought to stand in no better position where, as here, the trust device was not employed in fraud of creditors.
>
> \*　\*　\*　\*　\*　\*
>
> There has developed, however, another thread of decisions which takes cognizance of, and gives effect to, the power which a person exercises in life over property. When a person has a general power of appointment, exercisable by will or deed, and exercises that power, any property so appointed is, in equity, considered part of his assets and becomes available to his creditors in preference to the claims of his voluntary appointees or legatees.
>
> \*　\*　\*　\*　\*　\*
>
> Frequently, ... the settlor retains all the substantial incidents of ownership because access to the trust property is necessary or desirable as a matter of sound financial planning.... In other circumstances, persons place property in trust

in order to obtain expert management of their assets, while retaining the power to invade principal and to amend and revoke the trust. *It is excessive obeisance to the form in which property is held to prevent creditors from reaching property placed in trust under such terms.....* [I]t violates public policy for an individual to have an estate to live on, but not an estate to pay his debts with.

7 Mass.App.Ct. at 639, 389 N.E.2d 768 (citations omitted, emphasis supplied).

Commentators have noted that the importance of this case and others arriving at the same conclusion should not be underestimated, as prior to these recent decisions, a power of revocation was not regarded as an interest in property reachable by creditors. *See* J. Atkins, "Creditors' Rights against Trust Assets," 22 Real Prop., Prob. and Tr. J. 735 (1987). *See generally* A. Scott, The Law of Trusts § 156 (1959); Restatement (Second) of Trusts § 156 (1959); Restatement of Property § 328 (1940).

The Debtor in the instant case holds pervasive powers with regard to the Cowles Family Trust. The Court finds, therefore, that the assets of the trust must be made available for satisfaction of the creditors' claims. The specific extent to which the creditors may reach the trust, namely the Debtor's interest in the trust assets, is addressed below.

■  The determination of the extent of a debtor's interest in property also is controlled by state law. The Massachusetts case that most closely addresses the issue presently before the Court is *Wolfe v. Wolfe*, 21 Mass.App.Ct. 254, 486 N.E.2d 747 (1985). In that case, the Massachusetts Appeals Court was faced with a trust created by two settlors, each of whom contributed a fraction of the property of the trust. The terms of the trust specified that "[e]ach [s]ettlor may at any time during his or her lifetime withdraw all or any part of their respective transfers to the principal of" the trust. *Id.* The court found that Milton Wolfe contributed ⅚ths of the trust

assets, and that, therefore, Milton Wolfe had the absolute right and power to withdraw ⅝ths of trust corpus for his own use. The court held that, where the two settlors of the trust "retained a broad power to revoke or amend the trust," the creditors of one settlor could reach the assets of the trust to the extent that settlor could reach the assets himself. *Id.* Therefore, the court reached the conclusion that Milton Wolfe's creditors could reach ⅝ths of the assets of the trust.

Applying *Wolfe* to the facts of the present case leads to the inescapable conclusion that the creditors of the Debtor will be able to reach all of the trust res. In *Wolfe*, the trust specified that the settlors had the right to withdraw their fractional shares of the trust property. It was this language that limited Milton Wolfe's creditors to only ⅝ths and protected the ⅙th interest of the other settlor. The Cowles Family Trust, on the other hand, provides the "Donor" with the power "[t]o withdraw from the operation of this Trust any part or all of the trust property." Trust, Article Third, Paragraph A.6. Because the Debtor is named as the "Donor" and has the power to withdraw any part or all of the trust property, the Chapter 13 trustee and the Debtor's creditors may now reach all the assets of the Trust to satisfy their claims against the Debtor.

The Debtor has argued that the title of "Donor" includes both himself and his wife, as each of them contributed property to the trust, and that this should limit his creditors to only half of the trust property. However, the Court finds that the language of the trust mandates the finding that the Debtor alone is the "Donor." The Debtor specifically is defined as the "Donor." Article Fourth, Paragraph A ("The Donor, David H. Cowles ..."). In several instances the language of the trust treats the "Donor" and Carolyn Pierpont Cowles as alternatives, exclusive of each other. *E.g.,* Article First, Paragraph B ("the Donor's immediate family group is: 1. The Donor's wife, Carolyn Pierpont Cowles

..."); Article Fourth, Paragraph B ("Upon the death of the Donor, ... then, and in that event, Carolyn Pierpont Cowles ... shall serve as Trustee...."); Article Fourth, Paragraph C ("In the event that the said Carolyn Pierpont Cowles shall not survive the Donor ..."). Finally, the terms of the Trust specify, "This Trust shall become effective upon the execution of the original of this Declaration of Trust by the Donor," and the Debtor alone signed the Trust. These examples, when read together, satisfy the Court that the entity of "Donor," whom the Trust provided with sole powers to withdraw any part or all of the Trust property, is the Debtor alone. Therefore, the Debtor alone has the power to withdraw all of the property of the Trust, and the Debtor's creditors may reach all of the property of the Trust.

■ The Debtor makes an argument that if the Court's action allowing creditors to reach the trust's assets revokes the trust, the property would revert back to Debtor and his wife as tenants by the entirety. This argument is flawed for two reasons. First, nothing in this case suggests that the trust will be revoked. The Court can allow the creditors to reach the assets of the trust without requiring the revocation of the trust.

■ Second, even if the trust were revoked, the Debtor provides no legal support for the assertion that the property will return to the Debtor and his wife as tenants by the entirety, and the Court can find nothing that would support such an assertion. To the contrary, the initial transfer of the property to the trust thirteen years ago terminated the tenancy by the entirety. While it is true that one spouse acting alone cannot terminate a tenancy by the entirety without the consent of the other, *Smith v. Smith,* 361 Mass. 733, 282 N.E.2d 412 (1972), nothing prevents such termination by the two acting together. In the present case, when the Debtor and his wife together transferred the property to the trust, to be controlled by the Debtor alone,

they terminated the joint ownership and control that is a requirement of a tenancy by the entirety. Such a tenancy does not renew itself automatically in the future. For these reasons, the Debtor's argument that creditors will only be able to reach his fifty percent interest in the property is irrelevant.

## V. CONCLUSION

For the foregoing reasons, the Court holds that the Chapter 13 trustee and through him the Debtor's creditors can reach the net equity in the trust res. Therefore, Hagberg's objection to the Debtor's Chapter 13 plan is sustained, and the order of January 31, 1991, confirming the plan is vacated. The Court, however, makes no ruling with respect to what if any claims or interests Mrs. Cowles may assert, particularly in view of the fact that she was unrepresented by counsel through these proceedings, and in view of the recent decision in *In re Perry*, 131 B.R. 763 (Bankr.D.Mass.1991). To the extent that the parties are unable to submit a modified Chapter 13 plan in accordance with this opinion, the Court, pursuant to 11 U.S.C. § 105, hereby treats Hagberg's objection as being authorized by the trustee and as instituting an adversary proceeding for purposes of 11 U.S.C. § 544(a) and the statute of limitations set forth at 11 U.S.C. § 546(a) of the Bankruptcy Code.

The foregoing constitutes findings of fact and conclusions of law in accordance with Federal Rule Of Bankruptcy Procedure 7052.