In re Peter R. BEATRICE, Jr., Debtor.

Joseph Braunstein, Chapter
7 Trustee, Plaintiff,

v.

Peter R. Beatrice, Jr., Trustee of BJM
Realty Trust, Defendant.

Bankruptcy No. 00–11622–JNF.
Adversary No. 01–1255.

United States Bankruptcy Court,
D. Massachusetts.

April 19, 2002.

Michael H. Theodore, Riemer & Braunstein, Boston, MA, for Chapter 7 Trustee.

Steven J. Marullo, Murphy & Michaels, LLP, Boston, MA, for debtor.

Thomas E. Beatrice, Swampscott, MA, for beneficiaries.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matters before the Court are Cross–Motions for Summary Judgment filed by the Plaintiff, Joseph Braunstein, the Chapter 7 Trustee (the "Trustee") of the Estate of Peter R. Beatrice (the "Debtor"), and by the Intervenors, the Debtor's five children and the beneficiaries of the BJM Realty Trust, namely Thomas E. Beatrice, Peter R. Beatrice, III, Gregory V. Beatrice, John M. Beatrice, and Elise Budd (collectively, the "Beneficiaries"). The Trustee filed a Motion for Summary Judgment on January 15, 2002. He amended his Motion to correct a minor error in the caption on January 31, 2002. The Debtor filed an Opposition to the Trustee's Motion for Summary Judgment on February 12, 2002 together with the "Affidavit of Beneficiaries."[1] The Beneficiaries subsequently filed a Motion to Intervene on February 19, 2002, and, on the same day, Thomas E. Beatrice filed a "Supplementary Affidavit."

The Court heard the Trustee's Amended Motion for Summary Judgment and the Motion to Intervene on February 20, 2002. At the conclusion of the hearing, the Court granted the Motion to Intervene, directed the Beneficiaries to file an Answer to the Trustee's Complaint and the parties to file briefs. On March 15, 2002, the Beneficiaries filed an Answer and a Counterclaim, in which they merely alleged that the "Trustee's pleadings are insubstantial and frivolous." Counterclaim of Beneficiaries at ¶ 2. Several days later, they filed an Opposition to the Trustee's Amended Motion for Summary Judgment as well as a Cross–Motion for Summary Judgment. On March 27, 2002, the Trustee filed a Reply to the Beneficiaries' Counterclaim in which he denied the Beneficiaries' allegation and stated nine affirmative defenses, including failure to state a claim upon which relief may be granted and lack of good faith. The Trustee specifically requested the Court to strike the Counterclaim pursuant to Fed. R. Bankr.P. 9011. On March 29, 2002, the Trustee filed "Plaintiff's (1) Motion to Strike Affidavit of Beneficiaries in Support of Beneficiaries' Cross Motion for Entry of Summary Judgment on All Counts and (2) Opposition to Beneficiaries' Cross Motion for Entry of Summary Judgment on All Counts." On April 9, 2002, the Beneficiaries filed an Opposition to the Motion to Strike together with the Affidavit of Thomas E. Beatrice.

The issue presented by the Cross–Motions is whether a trust established by the Debtor for the benefit of his children, pursuant to which he retains the power to terminate the trust and to add or eliminate beneficiaries, is property of his bankruptcy estate. The only asset of the trust is a single family residence located at 39 Salem Street, Swampscott, Massachusetts in which the Debtor resides (the "property"). The material facts necessary to decide the issue are not in dispute, and, accordingly, the matter is ripe for summary judgment.

### II. PROCEDURAL BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on March 8, 2000. Approximately five weeks later, he moved to convert his Chapter 7 case to a case under Chapter 11. On May 16, 2000, the Court granted the Debtor's motion to convert his case to Chapter 11. Approximately 11 months later, however, the Debtor assented to the

---

1. Only three of the named beneficiaries signed the Affidavit.

conversion of his Chapter 11 case to a Chapter 7 case. Joseph Braunstein subsequently was appointed the Chapter 7 Trustee. The Trustee filed the above-captioned adversary proceeding against the Debtor on June 28, 2001.

Based upon the allegations set forth in his Complaint, the Trustee formulated four counts as follows: 1) Count I: Declaratory Judgment pursuant to 28 U.S.C. § 2201 that the Property is Property of the Estate pursuant to 11 U.S.C. § 541(a); 2) Count II: Declaratory Judgment Pursuant to 28 U.S.C. § 2201 that the Trust Is a Sham and, therefore, the Property Held in Trust is Property of the Estate pursuant to 11 U.S.C. § 541; 3) Count III: Declaratory Judgment pursuant to 28 U.S.C. § 2201 that the Debtor's Power to Appoint Himself as Beneficiary Can be Reached and Applied by the Trustee pursuant to Mass Gen. Laws ch. 214, § 3 or Is Otherwise Property of the Estate pursuant to 11 U.S.C. § 541; and 4) Count IV: For Money Had and Received.

### III. FACTS

#### A. *Facts Adduced by the Trustee*

On November 10, 1989, the Debtor established the BJM Realty Trust (the "Trust") by a Declaration of Trust recorded at the Essex South Registry of Deeds. On the same day, the Debtor, by deed recorded at the Essex South Registry of Deeds, deeded the property located at 39 Salem Street, Swampscott, Massachusetts to himself as trustee of the Trust for consideration of less than $100. At an examination of the Debtor conducted by counsel to the Committee of Unsecured Creditors while the Debtor's case was a case under Chapter 11, the Debtor admitted 1) that the property is a single family residence; 2) that he resides at the property; 3) that he pays all the bills with respect to the property, including costs and expenses associated with maintenance, upkeep and preservation of the residence, from both his personal checking account and a checking account in the name of Beatrice & Associates, a corporation in which he is the sole officer and shareholder; and 4) that he pays the real estate taxes on the property from both his personal and corporate checking accounts and deducts the real estate tax payments on his personal income tax return.

In his Complaint, the Trustee alleged 1) that the Debtor had never collected any rent for the property; 2) that the Debtor had pledged the property to secure his personal obligations; 3) that the Trust receives no income; 4) that the Debtor pays no rent to the Trust; and 5) that the Debtor maintains control over and otherwise exhibits indicia of ownership of the property. The Debtor denied these allegations in his Answer.

In the parties' Joint Pretrial Statement, the Debtor, in addition to admitting allegations made by the Trustee in his Complaint, admitted that as the donor of the Trust he had the right to terminate the Trust, in whole or in part at any time, as well as the right to add or eliminate beneficiaries, including the right to make himself the sole beneficiary at any time. Moreover, he admitted that he is the only person to have resided in the property since 1989 and that the Trust has never filed any income tax returns. The Debtor also admitted that, on February 24, 1969, he created the BJM Realty Trust by a Declaration of Trust recorded at the Essex South Registry of Deeds and that on the same day by deed recorded at the Essex South Registry of Deeds he deeded the property to himself as Trustee of the BJM Realty Trust.

#### B. *Facts Alleged by the Debtor and the Beneficiaries*

In a Memorandum of Law in Opposition to the Plaintiff's Motion for Summary

Judgment, which was *unsupported* by the Debtor's Affidavit, the Debtor contested the Trustee's statement of undisputed facts. Specifically, he denied transferring *his* single family residence to the Trust. Instead, he stated that he transferred the property to the BJM Realty Trust, "pursuant to an agreement of the beneficiaries" to accomplish a refinancing of the property which he held as Trustee of the BJM Realty Trust.[2] Opposition at p. 2. The Debtor also denied "that there was ever a reservation to add himself as beneficiary or sole beneficiary at any time," adding that "all beneficiaries not only had unlimited use of the premises and so utilized the property over periods of time since 1969 to date said beneficiaries utilized proceeds from the refinance in 1989"[sic]. *Id.* at p. 3. Further, the Debtor qualified his other admissions by stating that the Trust was under no obligation to file tax returns; that he paid all bills with respect to the maintenance, upkeep and preservation of the property and paid and deducted real estate tax bills "consistent with the Defendant's agreement with the beneficiaries." *Id.* at pp. 2–4.

In his own Statement of Undisputed Facts, the Debtor, relying upon the Affidavit of Beneficiaries, stated that "the ultimate proceeds of trust property were intended for the sole benefit of the beneficiaries and not the Defendant." *Id.* at p. 4. He added that "the addition of beneficiaries would only occur in the event the Trustee/Defendant had more children;" and that "[d]eletion of beneficiaries would occur in the event a beneficiary predeceased the distribution of trust proceeds." *Id.*

The Debtor explained the 1989 refinancing of the Salem Street property as follows:

It was necessary in 1989 to re-finance the property and to withdraw some of the equity value for the educational and other benefits of the named beneficiaries. All beneficiaries agreed that the Defendant should refinance in his own name and provide the proceeds to their health, welfare and educational expenses.

In order to accomplish the refinancing, it was agreed by all beneficiaries and the trustee as necessary to temporarily place the subject property in the name of the Defendant individually, because that was the only manner in which the refinancing could be accomplished.

\* \* \* \* \* \*

By agreement, the proceeds of said refinancing were used exclusively for the benefit of the named beneficiaries (for educational and other purposes); and none of said proceeds were used for the benefit of the Defendant.

By agreement the Defendant has, in fact, lived on the premises but he has, during that period, made all payments for repairs, taxes and principal and interest on the mortgage in order to maintain the principal for the benefit of the named beneficiaries . . . .

The Defendant, other than occupying the premises and paying to maintain them has not received any benefit, either of principal or interest from the trust property. Neither has the Defendant exercised exclusive control of the premises.

All beneficiaries have availed themselves or have had the opportunity to utilize the property for residential and recreational purposes at any and all times from 1969 to date, including use of the

---

**2.** He stated that the transfer was "pursuant to an agreement of the beneficiaries . . . to ac-complish the refinance and then back into trust."

dwelling and pool. The period of use has remained unbroken for almost 33 years.

Defendant's Memorandum of Law, pp. 4–6.

The Beneficiaries, in their Opposition to the Trustee's Amended Motion for Summary Judgment and in Support of their Cross–Motion, relied upon the facts set forth in the Defendant's Opposition, as well as the Affidavit of Beneficiaries. They stated "it was always intended, by both the beneficiaries and the settlor/Debtor, that legal title to the subject property was being held exclusively for the benefit of the named beneficiaries as equitable owners ... and the trust instrument, the circumstances of the creation of each trust and the subsequent conduct of the Debtor and the beneficiaries only confirms the intent of the donors to create an irrevocable trust for their children to insure their health, safety and education; and to accumulate an increase in equity over time." Beneficiaries' Memorandum of Law at p. 2.

In their Affidavit, the Beneficiaries asserted that the BJM Realty Trust was created for their exclusive benefit and that it was their understanding that their "parents would remain as trustees and pay all maintenance costs, mortgage amounts, taxes and that we all would reside on site for as long as we wished bearing in mind none of the beneficiaries were emancipated by 1969." Affidavit at ¶ 2. Additionally they asserted that "educational bills and expenses of the beneficiaries had made it desirable to refinance the property," *id.* at ¶ 3, and that they "were advised that in order to refinance, the property could not be held in trust but an individual would need to sign personally on a note and mortgage;" adding that "all beneficiaries agreed that our father, the named defendant, would take title and distribute the proceeds for our benefit and then re-convey the property in trust ... for our bene-

fit." *Id.* at ¶ 4. The Beneficiaries also stated that they "believed and understood that the their [sic] interest as beneficiaries in the property remained identical as that which existed unbroken for over 20 years." *Id.* Finally, in their Affidavit, the Beneficiaries stated that they agreed to the following:

a. any beneficiary was welcome to return to reside or stay at the property at any time in the future for any reason without any obligation to pay rent, taxes or contribute to the mortgage;

b. in exchange for being the donor of the premises in 1969 and being responsible for maintenance and payment of all mortgages and taxes the trustee was entitled to reside at the premises for as long as he wished;

c. trustee would also be able to take any and all legal tax advantages without alienating title;

d. the beneficiaries and their spouses and children would at any time use the property for their convenience or enjoyment; the property was indeed used by the beneficiaries and the children of the beneficiaries to a great extent year round including use the [sic] swimming pool;

e. proceeds from any future refinance(s) would be provided to the beneficiaries and the future equity of the property would be divided and distributed according to the trust;

f. the beneficiaries expected the property not to generate rental income nor would the trustee be required to pay rent; the main purpose of the trust property was to generate equity for the beneficiaries' benefit over time;

g. any addition of beneficiaries would only occur in the event the Trustee/Defendant had more children. Deletion of beneficiaries would occur in the event a

beneficiary predeceased the distribution of trust proceeds;

h. The trustee, other than occupying the premises and paying to maintain them, shall not receive benefits of either principal or interest from the trust property.

Affidavit of Beneficiaries at ¶ 5. They added that the terms of the Trust are consistent with their understanding of and agreement and that the actions of the trustee have been consistent with his duties and obligations under the trust and pursuant to the beneficiaries agreement. *Id.* at ¶¶ 6, 7.

C. *The Express Terms of the Trust*

The Declaration of Trust provides in pertinent part the following:

WHEREAS, I, Peter R. Beatrice, Jr., desire to establish a Trust for the benefit of my above-named children.

NOW, THEREFORE, I, Peter R. Beatrice, Jr., do hereby declare that I hold and will hold said Real Estate and other personal property conveyed to me as Trustees [sic] under this Declaration of Trust, upon the following trusts and the following powers:

1. As such Trustee, I shall have full power and absolute power to sell the said real estate or any portion thereof at public or private sale, *without the necessity of applying to any beneficiary or other person for authority to do so,* and upon such terms and conditions as to us [sic] may seem proper . . . .

2. As such Trustee, I shall have the power to borrow money and as security therefore to mortgage the whole or any part of the trust property by any form of mortgage. . . .

3. As such Trustee, I shall have full power to collect rents, to pay taxes, insurances and any and all other necessary charges against the trust estate, distributing the net income ratable to the beneficiaries at such time and in such amounts as to me in my discretion shall seem advisable. *At no time shall any beneficiary hereunder have the right to call for an accounting except upon termination of this trust as herin* [sic] *providing.*

\* \* \* \* \* \*

6. The Trustee shall determine whether and to what extent and at what time and places, and under what terms and conditions and regulations the accounts and books of the Trust shall be opened to the inspection of the beneficiaries, and *the beneficiaries shall not have any right to inspect any account or books or documents of the Trust except as authorized by the Trustee.*

\* \* \* \* \* \*

8. The Trustee may deposit funds of this Trust in any bank or banks as they [sic] may see fit, such accounts to be in their [sic] name as Trustee hereunder and he shall have full authority to draw checks against the same as Trustee.

9. The Trustee hereunder shall have all such poers [sic] not herin [sic] specifically enumerated as shall be necessary and proper to carry on the business of the Trust.

\* \* \* \* \* \*

12. No beneficiary hereunder may assign or transfer his or her interest to any other person, firm or corporation.

13. *The donor may at any time or from time to time terminate in whole or in part this trust hereby created.*

\* \* \* \* \* \*

15. *The donor shall have the right to add beneficiaries to this Trust and eliminate any name* [sic] *beneficiaries from sharing in this Trust. The donor shall notify in writing any beneficiary or*

*beneficiaries who he shall eliminate from any part of the Trust.*

Declaration of Trust, attached as Exhibit A to the Trustee's Complaint (emphasis supplied).

## IV. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well established. The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R. Bankr. P. 7056.

## V. DISCUSSION

### A. *The Trustee's Motion to Strike the Affidavit of Beneficiaries*

■ The Trustee, relying upon *FDIC v. Roldan Fonseca,* 795 F.2d 1102 (1st Cir. 1986), seeks an order striking the Beneficiaries' Affidavit. The Trustee argues that the Beneficiaries lack personal knowledge with respect to certain "facts" set forth in their Affidavit and that other facts constitute inadmissable hearsay. The Beneficiaries disagree, stating "the contents of the affidavit are perfectly admissible (contrary to Plaintiff's assertions, paragraphs 1–7[sic] of the affidavit are based upon personal knowledge and belief *and* this Court may take judicial notice of the usual and customary requirement for financing institutions to require individual signatures and liability on notes and mortgages with respect to refinancing residential dwellings ...)."

In *Roldan Fonseca* the court stated: "Fed.R.Civ.P. 56(e) requires nonmovants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment." 795

F.2d at 1110. As the Trustee correctly observes, the Beneficiaries make factual representations based upon statements of unidentified persons with respect to the need to transfer the property to the Debtor for purposes of refinancing the property and the terms of an alleged agreement among the Beneficiaries. More importantly, though, the Affidavit must be stricken because it violates the parol evidence rule. The Beneficiaries' understanding of what the Trust means and any agreement they have either among themselves or with the Debtor with respect to how the Debtor should undertake his duties as trustee of the Trust are irrelevant to this Court's interpretation of the *unambiguous* terms of the Trust.

■ In *Kerwin v. Donaghy,* 317 Mass. 559, 59 N.E.2d 299 (1945), the Supreme Judicial Court observed that

'Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by him as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to contradict or vary it.'

317 Mass. at 567–68, 59 N.E.2d at 304 (quoting Scott, Trusts (1939 §§ 38, 164.1)). The court added: "Though often stated in terms of the admissibility of evidence, the so called 'parol evidence rule' is really a rule of substantive law. Extrinsic evidence, even though admitted, cannot control the words of a document that purports to express the whole transaction." *Id.* at 568, 59 N.E.2d 299 (footnote omitted, citations omitted). *See also Fine v. Cohen,* 35 Mass.App.Ct. 610, 615–16, 623 N.E.2d 1134, 1138 (1993); Restatement (Second) of the Law of Trusts § 38 (1959).

In this case, the Beneficiaries and the Debtor, without alleging fraud, duress, mistake or any other grounds for reformation of the Trust, attempt to graft on to the Declaration of Trust an interpretation that is patently inconsistent with its express terms. The Court finds that the Trust unequivocally lodges unrestricted power in the Debtor to terminate the Trust at any time and for any reason and to add or eliminate the Beneficiaries at any time and for any reason. The understanding of the Beneficiaries and the Debtor to the contrary cannot alter the express and unambiguous language of the Trust. Accordingly, the Court shall enter an order striking the Affidavit of the Beneficiaries. Thus, in ruling on the Cross Motions for Summary Judgment, the Court shall only consider the Debtor's admissions and the Declaration of Trust.

B. *The Cross–Motions for Summary Judgment*

■ The Court finds that the powers vested in the Debtor as trustee compel the conclusion that the Trust *res*, i.e., the property located at 38 Salem Street, Swampscott, Massachusetts, is property of the Debtor's estate under 11 U.S.C. § 541(a)(1). Recent decisions in Massachusetts unequivocally support this conclusion. *See Wolfe v. Wolfe*, 21 Mass.App.Ct. 254, 486 N.E.2d 747 (1985); *ITT Comm. Fin. Corp. v. Stockdale*, 25 Mass.App.Ct. 986, 521 N.E.2d 417 (1988); and *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 389 N.E.2d 768 (1979). The holding of the United States Court of Appeals for the First Circuit in *Markham v. Fay*, 74 F.3d 1347 (1st Cir.1996), is particularly pertinent to resolution of the issue in the instant case as most of the cases cited by the Trustee, the Debtor and the Beneficiaries are thoroughly addressed by the First Circuit in its decision.

■ In *Fay*, the IRS assessed the settlor of several trusts as a "responsible person" and a federal tax lien arose " 'upon all property and rights to property, whether real or personal, belonging to' " her. 74 F.3d at 1355. According to the First Circuit, because the tax code merely attached federally defined consequences to property rights created under state law, it was required to look to state law to determine whether the trust instruments gave Fay such extensive powers over the trust property that it was in effect her own property under Massachusetts law. *Id.* at 1356. Just as the First Circuit was required to look to state law in *Markham v. Fay*, this Court also must look to state law to establish the scope and existence of the Debtor's property interest. *See In re Eastmare Dev. Corp.*, 150 B.R. 495, 498 (Bankr. D.Mass.1993) ("The scope of section 541 is broad and is intended to include in the estate any property made available by other provisions of the Code. However, non-bankruptcy law defines the scope and existence of the property interest.")(citing *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). *See also In re McNeilly*, 249 B.R. 576, 580 (1st Cir. BAP 2000) ("Absent some federal interest requiring a variant result, state law is the compass by which we ascertain the nature and scope of a debtor's property interests in a bankruptcy.").

In the First Circuit case, Fay was the settlor, sole trustee and one of three beneficiaries (the other two were her sons); her sister was the remainder beneficiary. She reserved to herself the right " 'to alter, amend and revoke this Trust, in whole or in part, and to terminate the same.' " *Id.* at 1357. In short, according to the First Circuit, "[t]hese unrestricted unconditional powers include[d] the right to sub-

stitute or strike out other beneficiaries, to vary the income or principal paid to the beneficiaries while the trust continues, including the power not to pay them at all, and to completely revoke the trust." *Id.* (citations omitted). The court also noted that Fay could make herself the sole beneficiary and amend the trust to terminate her sister's remainder interest, resulting in the merger of the legal and equitable title to the trust *res.* *Id.*

The court in *Fay* also considered the interests of the beneficiaries of the trusts. It distinguished between circumstances where the property rights of beneficiaries were vested because their rights depended only upon the survival until the death of other persons and circumstances where the beneficiaries' rights do not vest until the person holding the powers can no longer exercise them, in other words "where the right depends on the exercise or non-exercise of powers held by another." *Id.* at 1359. Thus, the court found the interests of Fay's sons and sister were not vested because "[a]ny right in Fay's sons or sister to receive part of the trust property is not contingent on a mere biological event, but on whether or not Fay exercises her power to amend or revoke the trusts, and on to whom and in what amounts she distributes income and principal while the trust continues." *Id.* The court concluded:

> Due to the broad nature of Fay's powers and the limited and unenforceable nature of the beneficial interests, Fay has the power to eliminate the interests of her sons and her sister. We therefore think that a Massachusetts court would treat the entire trust property of the ... [trusts] ... as Fay's own in favor of her creditors. Like the settlors in *Reiser, Stockdale* and *Wolfe,* Fay has the right to amend and revoke the trusts and to direct disposition of principal and income. Although there is nothing invalid in the roles of settlor, trustee and

beneficiary co-existing in the same person, in this case it meant that Fay had the power as trustee to distribute income and principal in whatever proportion she deemed proper, the right as a beneficiary to receive income and principal in whatever amount she as trustee deemed proper, and the unrestricted power as settlor to alter, amend, or revoke the trusts. The trusts at issue here are even more vulnerable to Fay's creditors than those at issue in *Reiser* and *Stockdale* because the other beneficiaries' interests in the trust have not vested and Fay remains able to exercise her powers and thus deplete or destroy them.

We do not hold that the trusts are invalid—a trust in which the settlor has reserved to herself the power to alter, amend or revoke, and is also the sole trustee and one of the trusts' beneficiaries with a right to receive income and principal in her own discretion as trustee, is not invalid. *See Roberts v. Roberts,* 419 Mass. 685, 646 N.E.2d 1061, 1064 (1995); *Sullivan,* 460 N.E.2d at 575; *Ascher,* 131 N.E.2d at 199–200. And although it may be only a technical distinction, we do not hold that Fay must exercise her power to amend or revoke to satisfy the tax debt. *See In re Cowles,* 143 B.R. 5, 10 (Bankr.D.Mass. 1992) ("The Court can allow the creditors to reach the assets of the trust without requiring revocation of the trust."). Rather, we hold that the federal tax lien on Fay's individual property reaches the entire assets of the ... [trusts] ... because Fay has the power to eliminate the other beneficiaries' interests and treat the trust property as her own based on the following combination of provisions in the trust instruments: (1) Fay as settlor has the power to alter, amend or revoke, which, if exer-

cised, could result in the entire trust property vesting in her; (2) Fay as trustee has absolute discretion to pay income and principal to the beneficiaries, including herself, in whatever proportion she deems appropriate, even if such payments entirely deplete the other beneficial interests; and (3) Fay is settlor, trustee and a beneficiary.

74 F.3d at 1359.[3]

The Court finds that the analysis of the First Circuit in *Fay* is applicable to the facts of the instant case. The Debtor, like Fay, retained broad powers to ·control the Trust. Pursuant to ¶¶ 3, 13 and 15, he had power to distribute net income in his sole discretion, to add or eliminate beneficiaries and to terminate the Trust. Moreover, the interests of the Beneficiaries have not vested because the Debtor retained the power to eliminate their interests at any time pursuant to either ¶ 15 or ¶ 13 of the Trust.

Additionally, the Court finds that the attempt by the Debtor and the Beneficiaries to distinguish between a power to revoke the Trust, not expressly set forth in the Trust, and the Debtor's power to terminate the Trust set forth in ¶ 13 it is without merit in the context of this Trust. The Court is not persuaded by their semantic argument as it elevates form over substance. If the Debtor elected to terminate the Trust, the effect would be the same as revocation—the property would revert to him as settlor.

Not only do the terms of the Trust give the Debtor control over termination and the naming of beneficiaries, they severely limit the rights of the Beneficiaries. The Debtor as trustee retained absolute power to sell the property without consulting the Beneficiaries. Similarly, he could fully encumber the property without consulting them. The Debtor, thus, retained the power to treat the property as his own. *See In re Cowles*, 143 B.R. at 9 (where debtor held pervasive power with regard to trust, the assets of the trust must be made available for satisfaction of the creditors' claims). *Cf. In re Herzig*, 167 B.R. 707, 711 (Bankr.D.Mass.1994)(the mere existence of a power to terminate caused the spendthrift provision to fail).

In *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 389 N.E.2d 768 (1979), the court observed that the settlor retained all the substantial incidents of ownership because access to the trust property was necessary and desirable to sound financial planning. The court added:

> [P]ersons place property in trust in order to obtain expert management of their assets, while retaining the power to invade principal and to amend and revoke the trust. It is excessive obeisance to the form in which property is held to prevent creditors from reaching property placed in trust under such terms. *See* Restatement of Property, § 328, Comment a (1940) . . . .

> [I]t violates public policy for an individual to have an estate to live on, but not an estate to pay his debts with. The Internal Revenue Code institutionalizes the concept that a settlor of a trust who retains administrative powers, power to revoke or power to control beneficial enjoyment "owns" that trust property

3. The court added: "Fay invokes *George v. Kitchens by Rice Bros., Inc.*, where we stated that 'a power of revocation under Massachusetts law is not considered property . . . and cannot be reached by creditors.' 665 F.2d 7, 8 (1st Cir.1981). *George* remains a correct interpretation of Massachusetts law where, as in that case, the only power reserved by the settlor, who was also the trustee but not a beneficiary, was the power to revoke." 74 F.3d at 1359–60.

and provides that it shall be included in the settlor's personal estate. I.R.C. §§ 2038 and 2041.

7 Mass.App.Ct. at 638, 389 N.E.2d at 771 (citations omitted). The Court finds this reasoning applicable to the facts of the instant case.

The Court also notes that the Debtor, to the outside observer, retained the incidents of ownership of the property, despite the efforts of the Debtor and the Beneficiaries to suggest otherwise. He is the only person to have resided in the property; he pays all the bills associated with the maintenance and upkeep of the property from his personal or business checking accounts; and he pays and deducts on his personal income tax return the real estate taxes associated with the property. Although his children visit him and have free access to and use of the property, those privileges are common among family members and are not unique to a trust relationship. The Debtor's use of the property, when coupled with the express terms of the Trust, compel the conclusion that public policy also requires that the Trust asset be made available for satisfaction of the Debtor's prepetition debts.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order striking the Affidavit of Beneficiaries and granting the Trustee's Amended Motion for Summary Judgment with respect to Counts I through III of his Complaint. As the Trustee presented no evidence was respect to Count IV, the Court shall deny summary judgment with respect to Count IV of his Complaint. The Court shall deny the Beneficiaries' Cross Motion for Summary Judgment. In light of this ruling and the Trustee's request to strike the Beneficiaries' Counterclaim, the Court shall enter an order dismissing the Counterclaim for failure to state a cause of action.

## ORDER

In accordance with the Memorandum dated April 18, 2002, the Court hereby strikes the Affidavit of Beneficiaries and grants the Trustee's Amended Motion for Summary Judgment with respect to Counts I through III of his Complaint. As the Trustee presented no evidence was respect to Count IV, the Court denies summary judgment with respect to Count IV of his Complaint. The Court denies the Beneficiaries' Cross Motion for Summary Judgment and dismisses the Beneficiaries' Counterclaim for failure to state a cause of action.