In re Jane A. TOUGAS, Debtor.

Lynne F. Riley, Chapter 7 Trustee of the Estate of Jane A. Tougas, Plaintiff,

v.

Jane A. Tougas, Individually and as Trustee of the Tougas Family Realty Trust and George C. Tougas, Jr., Defendants, and

Fidelity Distributors Corp., d/b/a Fidelity Investments, Equitable Defendant.

Bankruptcy No. 01–17743 JNF. Adversary No. 02–01154.

United States Bankruptcy Court, D. Massachusetts.

Feb. 14, 2006.

---

166

Leonard M. Frisoli, Jr., Frisoli & Associates, Cambridge, MA, for Debtor.

**MEMORANDUM**

JOAN N. FEENEY, Bankruptcy Judge.

**I. INTRODUCTION**

The matters before the Court are Cross–Motions for Partial Summary Judgment with respect to Counts I, II, III and XIII of the Complaint filed by Lynne F. Riley, Chapter 7 Trustee of the Estate of Jane A. Tougas, the Debtor. Through her Motion for Partial Summary Judgment, the Trustee seeks 1) a declaration that certain property held by Jane A. Tougas (the "Debtor"), individually or as Trustee of the Tougas Family Realty Trust ("Trust"), is property of the bankruptcy estate pursuant to 11 U.S.C. § 541; 2) alternatively, a declaration that the Trust is a sham or straw Trust because of the Debtor's pervasive control over the Trust, rendering the Trust *res* property of the Debtor's bankruptcy estate; 3) a judgment requiring turnover of Trust property in an account at Fidelity Investments ("Fidelity") for the benefit of the estate; and 4) the avoidance and recovery, pursuant to 11 U.S.C. § 549(a), of $19,000.00 in unauthorized post-petition withdrawals by the Debtor from the Fidelity account, the proceeds of which comprised part of the Trust *res*.

The Debtor filed an Opposition to the Trustee's Motion for Partial Summary Judgment and a Cross–Motion for Partial Summary Judgment with respect to Counts I, II, III, and XIII. She maintains that genuine issues of material fact exist which preclude the entry of summary judgment and that she is entitled to partial summary judgment in her favor.

The Court heard the Cross Motions on January 31, 2006 and took the matters

under advisement. The controlling issue is whether the Trust and the Trust *res* are property of the Debtor's bankruptcy estate because the Debtor, as co-settlor and sole trustee of the Trust, retained broad power to alter and amend the Trust and retained the incidents of ownership of the Trust *res*.

## II. FACTS[1]

### A. *Undisputed Facts*

The Debtor filed a voluntary Chapter 7 petition on October 5, 2001. She did not list an interest in real property on Schedule A. On Schedule B–Personal Property, she disclosed that she was Trustee of the Tougas Family Realty Trust, adding that she was the Trustee only, that she had "no equitable interest" in the Trust, that the value of the Trust was $53,000.00, and that the Trust was excluded from property of the estate under 11 U.S.C. § 541. On Schedule F–Creditors Holding Unsecured Nonpriority Claims, she listed debts totaling $49,585.00, including an obligation to George Tougas and Jacanta [sic] Tougas in the sum of $10,000.00. She described this debt as follows: "borrowed money from trust with authorization of beneficiaries to pay legal fees for law suit by Wareham Community Dev. Authority & to pay accountant fees and taxes for trust."

On Schedules I and J, Current Income and Expenses of Individual Debtor(s), the Debtor disclosed that she is employed as a teacher's aide at the Old Rochester Regional School District earning net monthly income of $1,075.80 and incurring monthly expenses of $1,345.00.

The Debtor is the original and sole Trustee of the Trust pursuant to a declaration of trust, dated August 8, 1991, and recorded in the Plymouth County Registry District of the Land Court. The Debtor and her late husband, George C. Tougas, Sr., were the settlors of the Trust. George C. Tougas, Sr. died on August 8, 1996. According to the Schedule of Beneficiaries of the Trust, dated August 8, 1991, upon the death of George C. Tougas, Sr., the living issue of the Debtor and George C. Tougas, Sr. became the beneficiaries of the Trust. The Debtor's children, George Tougas, Jr. and Jacante Tougas, are the only living issue of the Debtor and George C. Tougas, Sr.

By deed dated August 8, 1991, the Debtor and George C. Tougas, Sr. transferred title to their residence, located at 18 Cove Circle, Marion, Massachusetts, which they owned as tenants by the entirety, to the Trust for nominal consideration. Approximately seven years later, and two years after her husband's death, the Debtor sold the Trust property for $390,000.00. The net proceeds of the sale were eventually deposited into an account, number Z31–067342, which was in the Debtor's name, at Fidelity. The Debtor is the only person authorized to withdraw funds from the Fidelity account. She is able to call and obtain the issuance of a check, which she can then deposit in her personal checking account.

The Debtor filed an individual, federal income tax return for 1998 in which she personally claimed a capital gains exclusion in the sum of $250,000.00 for the profit from the sale of the Trust property. The Debtor also reported income from the Trust on her individual tax returns for 1998 and 1999.

By letter dated March 29, 2000, the Debtor asked Fidelity to change the name on her account from Jane A. Tougas to "Tougas Family Realty Trust." The Trust filed a fiduciary return in 2001, the year in

---

**1.** The Trustee filed a Plaintiff's Statement of Undisputed Material Facts. The Debtor responded to the Trustee's recitation of the facts.

which the Debtor filed a Chapter 7 petition.

On January 2, 2002, approximately three months after the Debtor filed her voluntary Chapter 7 petition, the Trustee filed a Motion for Leave to Examine Debtor Jane A. Tougas pursuant to Bankruptcy Rule 2004(a) and for Production of Documents. On the same day, the Trustee also filed a Motion for 60–Day Extension of Time to Object to Debtor's Discharge and/or Dischargeability of Debts in which she requested an extension of time to March 8, 2002 within which to file a complaint under 11 U.S.C. §§ 523, 727. On March 4, 2002, she filed an Assented-to Motion for Second 60–Day Extension of Time to Object to Debtor's Discharge, requesting a further extension to May 7, 2002. The Trustee filed the instant Complaint on May 6, 2002, which, among its 13 counts, contains counts under 11 U.S.C. § 727(a)(6) (Count VII), § 727(a)(3)(Count VIII), as well as the counts referenced above.[2]

The Trustee conducted an examination of the Debtor on February 12, 2002 and April 30, 2002. The Debtor testified, and her Schedules I and J reflect, that her income from her job as a teacher's aide is insufficient to satisfy in full her regular monthly living expenses. The Debtor testified that her children lend her money from the Trust when she needs it. The Debtor, however, has never executed a promissory note with her children or established any repayment terms. Moreover, the Debtor's children have never refused her request for a loan. The Debtor indicated that she hopes to repay the loans from her children but has no plan for doing so.

Immediately prior to the commencement of the Debtor's bankruptcy estate, the Trust *res* totaled $44,941.75. On May 10, 2002, this Court issued a preliminary injunction, and, on or about May 15, 2002, Fidelity "froze" the Debtor's account. As of May 31, 2002, the Trust *res* in the Fidelity Account was $25,077.90. The Debtor made post-petition withdrawals from the Fidelity account which she used for living expenses and to pay for her daughter's wedding. These withdrawals are summarized below.

| Check Date | Check Number | Amount | Payee |
| --- | --- | --- | --- |
| 02/04/02 | 301906725 | $1,200.00 | Jane A. Tougas, Trustee (Deposited in Debtor's personal account at Citizens Bank) |
| 02/13/02 | 301910992 | $1,000.00 | Same |
| 02/14/02 | 301911653 | $ 500.00 | Jane A. Tougas, Trustee (Deposited in Debtor's personal account at People's Savings Bank) |
| 02/26/02 | 301915310 | $1,200.00 | Jane A. Tougas, Trustee (Deposited in Debtor's personal account at Citizens Bank) |
| 03/25/02 | 301926237 | $4,000.00 | Same |
| 04/26/02 | 301940783 | $4,500.00 | Same |
| 05/09/02 | 301945546 | $3,100.00 | Same |
| 05/10/02 | 301945834 | $3,000.00 | Same |
| 05/13/02 | 301946456 | $ 500.00 | Jane A. Tougas, Trustee (Deposited in Debtor's account at People's Savings Bank) |

**2.** The Trustee entered into a Settlement Agreement with George C. Tougas, Jr. with respect to counts IV, V, VI, X and XI.

The Debtor withdrew a total of $19,000.00 after the commencement of her bankruptcy case.

### B. *George C. Tougas, Jr.'s Chapter 7 Case*

George C. Tougas, Jr. filed a voluntary Chapter 7 petition on August 20, 1998, approximately two years before his mother elected to file her Chapter 7 petition. On his Schedule B, he disclosed a 50% beneficial interest in the Trust. He referenced its spendthrift provisions and 11 U.S.C. § 541(c)(2); he also claimed $5,275.00 exempt under 11 U.S.C. § 522(d)(5). The duly appointed Chapter 7 trustee investigated George Tougas Jr.'s assets. By letter dated September 21, 1998, a bankruptcy investigator from the trustee's law firm requested "[a]ny instrument that the Debtor is relying on to claim the exemption of the Spend Thrift Clause of the Tougas Family Realty Trust . . . ." The trustee did not commence an adversary proceeding relating to the Trust, and, approximately two months later, George C. Tougas, Jr. received a discharge. Seven months after his case was filed, it was closed as a "no-asset" case.

### C. *The Affidavits*

The Debtor attached an Affidavit, dated January 23, 2006, to her Opposition in which she stated that she has never been a beneficiary of the Trust; that she does not have the power to terminate or to revoke the Trust, or the power to substitute, add, or eliminate beneficiaries of the Trust; that she has never amended the Trust; and that the only Trust money disbursed to her was with the express permission of her children.

George Tougas, Jr. also filed an Affidavit, dated January 25, 2006, in which he stated that he authorized his mother to borrow money from the Trust and that his mother disbursed monies to him and to his sister, as beneficiaries of the Trust.

### III. THE TRUST

The dispute between the Trustee and the Debtor concerns the interpretation of the Trust instrument. The pertinent provisions are reproduced below:

III. *TERMINATION* This trust shall terminate upon the occurrence of any of the following events:

A. Twenty (20) years from the date of this trust; or,

B. Recording in the Registry of Deeds in which this Declaration of Trust is recorded of an instrument terminating the trust and *signed by the settlors while the settlors are still living,* or upon the death of the settlors, an instrument in writing signed by a majority of the beneficiaries named hereunder.

In case of any such termination, the trustee shall transfer and convey the specific assets constituting the trust estate, subject to any leases, mortgages, contracts, or other encumbrances on the trust estate to the settlors. Should the settlors no longer be living, then instead to the trustee shall transfer and convey the specific assets constituting the trust estate, subject to any leases mortgages, contracts, or other encumbrances, to the beneficiaries.

IV. *APPOINTMENT OF SUCCESSOR TRUSTEE* The settlors, or their survivor, shall have the right to designate a successor trustee by an instrument in writing signed by the settlors, or their survivor, recorded in the Registry of Deeds in which this Declaration of Trust is originally recorded. Upon the

death of the settlors, the beneficiaries shall have the right to appoint a successor trustee . . . .

V. *MANAGEMENT OF TRUST ESTATES* The trustee shall hold, manage, maintain, insure, and preserve the said properties which the trustee holds and shall collect all rents and income therefrom for the benefit of the beneficiaries named under this trust.

VI. *POWERS OF THE TRUSTEE* Upon written consent of the settlors, the trustee, or their survivor successors in general, shall have the power to deal with the trust property as if they were the absolute owners thereof, free from all trusts and to take any other action that they may deem beneficial to the trust . . . .

\*   \*   \*   \*   \*   \*

VIII. *SPENDTHRIFT PROVISIONS* The interest of any beneficiary hereunder, either as to income, interest, or principal, shall not be anticipated, alienated or in any other manner assigned by such beneficiary and shall not be subject to any legal or equitable process, attachment, levy, seizure, bankruptcy proceedings, interference of control involuntarily by or of creditors of any beneficiary hereunder.

IX. *AMENDMENT OF TRUST DOCUMENT This trust may be amended or altered from time to time by an instrument in writing signed by the trustee or a successor trustee.* Said amendment or alteration shall not be valid until it is recorded in the Registry of Deeds in which the original Declaration of Trust is first recorded.

Declaration of Trust, Establishing Tougas Family Trust (emphasis supplied).

## IV. POSITIONS OF THE PARTIES

### A. *The Trustee*

The Trustee maintains that the Trust *res* is property of the Debtor's estate. Relying upon *In re Marrama,* 316 B.R. 418 (1st Cir. BAP 2004), and *In re Beatrice,* 277 B.R. 439 (Bankr.D.Mass.2002), *aff'd,* 296 B.R. 576 (1st Cir. BAP 2003), she argues that because the Debtor, as settlor, retained the right to revoke the Trust, has broad power to alter or amend the Trust document, has absolute power to deal with the Trust *res* as if it were her own, and used the Trust *res* for living expenses, the Trust *res* should be part of her bankruptcy estate. She points to the indicia of ownership of the Trust *res* exercised by the Debtor, namely the $250,000.00 capital gains exemption claimed by the Debtor on her personal income tax return, as well as the decision to report income from the Trust *res* on her individual tax returns. She also points out that the Fidelity account was in the Debtor's name prior to 2001 and that she withdrew funds from the Fidelity account and used them for personal purposes.

The Trustee also seeks, pursuant to 11 U.S.C. § 549, to avoid and recover the $19,000.00 withdrawn by the Debtor from the Fidelity account after she filed her bankruptcy petition.

### B. *The Debtor*

The Debtor maintains that the interests of the beneficiaries of the Trust have vested and that the Debtor has no power to revoke the Trust. She states that only the settlors, acting together while alive, had the power to terminate the Trust. The Debtor also argues that the cases cited by the Trustee are distinguishable and that trusts containing spendthrift provisions are recognized as valid in Massachusetts. Citing, *Trager v. Schwartz,* 345 Mass. 653, 189 N.E.2d 509, 511–12 (1963), she states: "A trust cannot be revoked or altered except by a reserved power to do so, which

must be exercised in strict conformity with its terms. The Debtor as surviving settlor does not have the power to revoke, and to the extent she did, the Trust *res* is required to be disbursed to the beneficiaries, under the strict terms of the Trust."

The Debtor, relying upon *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7 (1st Cir.1981), a case in which the debtor was sued in her capacity as trustee with respect to a contract pertaining to real property which was held in a revocable trust for the benefit of the debtor's children, maintains that the power to revoke a trust under Massachusetts law is not considered property.

With respect to Trustee's assertion that she is entitled to avoid and recover $19,000.00 in postpetition transfers, the Debtor argues that she scheduled her legal ownership in the Trust and that her actions were proper and cannot be avoided because there was no court order or injunction precluding her from taking the actions she did.

The Debtor also argues that the closing of the case filed by George Tougas, Jr. has a preclusive effect and is controlling in Debtor's case because the trustee in that case filed a report of no distribution after the debtor had claimed his beneficial interest in the Trust was not an asset of his bankruptcy estate or was exempt. Citing

*Kobrin v. Bd. of Registration in Medicine*, 444 Mass. 837, 842–845, 832 N.E.2d 628 (2005), she makes the following argument:

> The Chapter 7 Trustee in Tougas Jr.'s case investigated said beneficial interest, and subsequently closed the case without taking any action. Pursuant to 11 U.S.C. § 554(c), once a case is closed any undistributed assets are abandoned back to the Debtor. Further, Tougas' Jr.'s interest was claimed as exempt, and is exempt forever, pursuant to 11 U.S.C. § 522(c) [sic]
>
> Tougas Jr., has also received his discharge pursuant to 11 U.S.C. § 524, which operates as an injunction against pursuing his own property. Accordingly, it is clear that the beneficial interest in the Trust has already been investigated, exempted, and abandoned to Tougas, Jr.[3]

## V. DISCUSSION

### A. *Summary Judgment Standard*

The standard for allowance of summary judgment needs little explication. This Court may enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

3. The Debtor adds the following:

Further, it is important to note that both Tougas, Jr., and the Debtor share a common creditor. Attorney Dennis Conry, who was the catalyst of the captioned adversarial proceeding, has taken a very involved role in pursuing both Tougas, Jr. and the Debtor. Attorney Conry was listed as counsel to related creditors in both bankruptcy petitions. It is clear that the related creditors, through Attorney Conry, have already had the opportunity to litigate the issue of the ownership of the beneficial interest of the Trust. In fact, Attorney Conry continues to attend state court hearings in a case

involving Tougas, Jr., despite Tougas Jr., filing of a Suggestion of Bankruptcy in the state court proceeding, and receiving his discharge. Attorney Conry's actions appear to be an attempt to extract some sort of settlement from Tougas Jr. or the Debtor. Attorney Conry's actions are clearly a violation of the discharge injunction. Accordingly, the issue as to owner of the beneficial and equitable interest of the Trust, has already been heard, and is therefore barred by claim preclusion and/or issue preclusion. *See Kobrin v. Bd. of Registration in Medicine*, 444 Mass. 837, 842–845, 832 N.E.2d 628 (2005).

entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c), made applicable to this proceeding by Fed. R. Bankr.P. 7056(c). In considering a motion for summary judgment, this court must draw all reasonable inferences from the facts in the manner most favorable to the nonmovant. *See Beatrice v. Braunstein (In re Beatrice),* 296 B.R. 576, 579 (1st Cir. BAP 2003)(citing *Desmond v. Varrasso (In re Varrasso),* 37 F.3d 760, 763 (1st Cir.1994), and *Piccicuto v. Dwyer,* 39 F.3d 37, 40 (1st Cir.1994)).

### B. *Analysis*

#### 1. The Trust *Res*

■ For the reasons set forth below, the Court finds that there are no genuine issues of material fact and that the Trustee is entitled to judgment on Counts I, II, III and XIII as a matter of law. Although the Debtor maintains that there are factual disputes, this Court finds that they are not material. Moreover, the Court is unpersuaded by the Debtor's argument that the trustee's failure to administer George C. Tougas, Jr.'s interest in the Trust in his Chapter 7 case is controlling with respect to the issues raised in this adversary proceeding. In the absence of any contested matter or adversary proceeding commenced in George Tougas, Jr.'s bankruptcy case and the entry of an appealable order or judgment, the Court concludes that the Debtor's argument with respect to her son's bankruptcy case lacks merit.

In *Kobrin v. Bd. of Registration in Medicine,* 444 Mass. 837, 832 N.E.2d 628 (2005), the case cited by the Debtor, the Supreme Judicial Court stated:

> The term "res judicata" includes both claim preclusion and issue preclusion. *See Heacock v. Heacock,* 402 Mass. 21, 23 n. 2, 520 N.E.2d 151 (1988). "Claim preclusion makes a valid, final judgment conclusive on the parties and their priv-

ies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *O'Neill v. City Manager of Cambridge,* 428 Mass. 257, 259, 700 N.E.2d 530 (1998), quoting *Blanchette v. School Comm. of Westwood,* 427 Mass. 176, 179 n. 3, 692 N.E.2d 21 (1998). This "is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.'" *O'Neill v. City Manager of Cambridge, supra,* quoting *Heacock v. Heacock, supra* at 24, 520 N.E.2d 151. The invocation of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *DaLuz v. Department of Correction,* 434 Mass. 40, 45, 746 N.E.2d 501 (2001), quoting *Franklin v. North Weymouth Coop. Bank,* 283 Mass. 275, 280, 186 N.E. 641 (1933).

Similarly, issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock v. Heacock, supra* at 23 n. 2, 520 N.E.2d 151. Before precluding a party from relitigating an issue, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Tuper v. North Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134, 697 N.E.2d 983 (1998), and cases cited. "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." *Id.* at

134–135, 697 N.E.2d 983, and cases cited. Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. *See Fidelity Mgt. & Research Co. v. Ostrander,* 40 Mass.App.Ct. 195, 199, 662 N.E.2d 699 (1996). 444 Mass. at 843–44, 832 N.E.2d 628. The Debtor failed to identify any final judgment on the merits in support of her argument or any of the other elements articulated by the Supreme Judicial Court in *Kobrin* for the application of either claim or issue preclusion. In addition to failing to identify a final judgment, she failed to cite any authority for the proposition that the Trustee in the Debtor's case is in privity with the trustee in George Tougas, Jr.'s case. Finally, the Debtor improperly assumed that the issues examined by the trustee in George Tougas, Jr.'s case are identical to the issues raised by the Trustee in this adversary proceeding, although they are not. The spendthrift clause set forth in Article VIII of the Trust affected the ownership interest of the beneficiaries, of which George Tougas, Jr. is one. The spendthrift provision has no application to the Debtor as settlor and trustee of the Trust.

■ Section 541(a) provides that upon commencement of a bankruptcy case, the estate is "comprised of all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). It does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). Moreover, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Thus, "[p]roperty in which the debtor holds, as of the commencement of the case,

only legal title and not an equitable interest, . . . become property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). In ascertaining the existence and scope of a debtor's legal and equitable interest in property, the Court must look to state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also Braunstein v. Beatrice (In re Beatrice),* 277 B.R. 439 (Bankr. D.Mass.2002), *aff'd,* 296 B.R. 576 (1st Cir. BAP 2003)(citing *In re Eastmare Dev. Corp.,* 150 B.R. 495 (Bankr.D.Mass.1993)), and *McNeilly v. Geremia (In re McNeilly),* 249 B.R. 576 (1st Cir. BAP 2000). "When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship; he must prove title and identify the trust fund or property and, where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property." *Beatrice,* 296 B.R. at 580 (citing 5 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 541.11 (15th ed. rev'd 2003)).

■ The fundamental issue presented by the Cross–Motions for Partial Summary Judgment is the same as that decided by a number of courts in the First Circuit, namely under what circumstances is a power to revoke or terminate a trust "property" such that the Trust *res* must be considered property of the estate. *See, e.g., Marrama v. Degiacomo (In re Marrama),* 316 B.R. 418 (1st Cir. BAP 2004); *Beatrice v. Braunstein (In re Beatrice),* 296 B.R. 576 (1st Cir. BAP 2003); *Aylward v. Landry (In re Landry),* 226 B.R. 507 (Bankr.D.Mass.1998); *In re Cowles,* 143 B.R. 5 (Bankr.D.Mass.1992). The outcome of these cases sometimes turns on

whether the settlor or trustee is also a beneficiary of the trust or whether the debtor treated the trust *res* as if it were his own.

The Court finds that the facts set forth in *Cowles* and *Beatrice*, are substantially similar to the facts in the instant case and support the result reached here. Moreover, the state court decision in *ITT Commercial Fin. Corp. v. Stockdale*, 25 Mass. App.Ct. 986, 521 N.E.2d 417 (1988), supports the result as well. In these cases, the settlor, although not a beneficiary, reserved broad power to revoke the trust and change the beneficiaries.

In *Cowles,* the debtor was the settlor and trustee of a trust whose beneficiaries were his wife and child. Pursuant to the trust document, the debtor retained the power to revoke, alter and amend the trust, as well as the power to change the identity and number of trustees and beneficiaries and to withdraw any or all of the property in trust. 143 B.R. at 7. The court in *Cowles*, observed:

4. The court in *Cowles,* cited *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 389 N.E.2d 768 (1979). In *Reiser* the court stated the following:

> Traditionally the courts of this Commonwealth have always given full effect to inter vivos trusts, notwithstanding retention of powers to amend and revoke during life, even though this resulted in disinheritance of a spouse or children and nullified the policy which allows a spouse to waive the will and claim a statutory share.... It might then be argued that a creditor ought to stand in no better position where, as here, the trust device was not employed in fraud of creditors.
>
> \* \* \* \* \* \*
>
> There has developed, however, another thread of decisions which takes cognizance of, and gives effect to, the power which a person exercises in life over property. When a person has a general power of appointment, exercisable by will or deed,

[T]he powers retained by the trustee were expansive. In the present case, not only does the Debtor/settlor retain a power to revoke or amend, he retains the power to change the identity and number of beneficiaries. The clear import of the recent Massachusetts cases is to look at the indicia of ownership and not the form in which the property is held.

143 B.R. at 8–9.[4] *See also* J. Atkins, "Creditors' Rights against Trust Assets," 22 Real Prop., Prob. and Tr. J. 735 (1987), A. Scott, The Law of Trusts § 156 (1959); Restatement (Second) of Trusts § 156 (1959); Restatement of Property § 328 (1940).

In *Beatrice* the debtor had similar powers. In addition, he lived in the property which constituted the trust *res,* paid all bills with respect to the property, including the real estate taxes, and pledged the property to secure his personal obligations. 277 B.R. at 441. The bankruptcy appellate panel, in affirming the decision of this Court stated:

> and exercises that power, any property so appointed is, in equity, considered part of his assets and becomes available to his creditors in preference to the claims of his voluntary appointees or legatees.
>
> \* \* \* \* \* \*
>
> Frequently, ... the settlor retains all the substantial incidents of ownership because access to the trust property is necessary or desirable as a matter of sound financial planning.... In other circumstances, persons place property in trust in order to obtain expert management of their assets, while retaining the power to invade principal and to amend and revoke the trust. It is excessive obeisance to the form in which property is held to prevent creditors from reaching property placed in trust under such terms..... *[I]t violates public policy for an individual to have an estate to live on, but not an estate to pay his debts with.*
>
> 7 Mass.App.Ct. at 639, 389 N.E.2d 768 (citations omitted, emphasis supplied).

What is important is not whether the trustee has the power to revoke or terminate, or the precise language used in the trust document at issue to convey those concepts, but rather that the trust bestowed upon the trustee broad powers to modify the trust-including full and absolute power to sell the real estate, power to pledge the property to secure his personal debt, and power to add and eliminate beneficiaries at any time. The trust document need not use the specific term(s) "revoke" or "terminate" in order for the court to find that the trustee retained sufficient control over the trust res to make it property of the estate pursuant to 11 U.S.C. § 541(a).

296 B.R. at 581.

In *Stockdale*, the court, citing *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 389 N.E.2d 768 (1979), determined that trustee/settlor retained broad powers to amend and revoke the trust and to substitute beneficiaries, such that summary judgment could ... rest on "the creditor's right to reach the trust property as if it had been the debtor's own." 25 Mass.App.Ct. at 988, 521 N.E.2d 417.[5]

In the instant case, the Debtor's powers under the Trust did not include a specific power to alter or eliminate beneficiaries. The Debtor, however, retained several significant powers in addition to the power under Article VI to treat the Trust *res* as if she was the absolute owner of it. She retained the power, as trustee, to amend or alter the Trust document under Article IX, and, as settlor, the power under Article III to terminate the Trust. These powers, taken together, permit the Debtor to amend the Trust document to revise the termination article to eliminate any need for both settlors to be living and to sign an instrument, and they permit her to change the beneficiaries. Because she retained the power through Article IX to change or eliminate beneficiaries in Article II and to revise Article III to permit termination of the Trust and a conveyance of the Trust property to herself, the Debtor's control over the Trust *res* both through the Trust document and in practice is manifest.

Not only did the Debtor retain sufficient powers to eliminate the beneficiaries and terminate the Trust, her conduct demonstrated that she ignored the provisions of the Trust and treated the Trust *res* as her own. She took advantage of favorable tax provisions relating to proceeds from the sale of a home to claim an exemption from capital gains taxes for her home in Marion, Massachusetts, and she used the Fidelity

---

**5.** In *Stockdale,* the court observed:

... the settlor of the trust, Romanek, expressed the copious powers reserved to the trustee. So, for example, art. V provided that the trustee "shall have full power to deal [with the trust estate] as if he were the beneficial owner thereof...." Among the many specific powers conferred by art. V, without limiting general powers granted, was authority "to enter into and execute ... any other obligations, instruments or undertakings...." Under art. V, subparagraph 18, the trustee could "construe any of the provisions of this Declaration of Trust, and ... act on any such construction, and [the trustee's] construction of the same in any action taken in good faith pursuant thereto shall be final and conclusive on all parties in interest." By art. X the trustee could, from time to time, change the beneficiaries named in the trust and by art. XV, the settlor-trustee reserves the right to alter, amend, or revoke the trust instrument. Perhaps the most potent provision for purposes of this case, appeared in art. VII, paragraph 2, wherein it is declared that "[a]ny act ... done by the Trustee, ... shall, as to all persons dealing with such Trustee ... be conclusively deemed to be within the purpose of his Declaration of Trust, and within the powers of the Trustee."

25 Mass.App.Ct. at 987, 521 N.E.2d at 417–18.

account to fund her personal checking accounts.

The Debtor makes two arguments challenging the Trustee's position that warrant mention. In the first place, she states that the power to revoke is not property of the estate, citing *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7 (1st Cir.1981). Secondly, she asserts that the beneficiaries' interests in the Trust have vested. The Court is not persuaded by either argument.

In *In re Marrama*, 316 B.R. 418 (1st Cir. BAP 2004), the bankruptcy appellate panel distinguished between revocation and termination. It stated:

"The terms 'revocation' and 'termination' are generally not synonymous. *See* 76 Am.Jur.2d Trusts § 97 (explaining that termination is an umbrella term under which revocation is one of many specific forms). Paragraph 7 of the Trust instrument provides specific conditions upon which the Trust terminates: death of the last surviving primary beneficiary, or the sale of all Trust real estate. These termination events are distinct from Marrama's revocation power, which is unconditional. Indeed, termination of the Trust on either of those conditions is a function of the Trust's operation, not its revocation."

*Id.* at 422.[6] In the instant case, the Court concludes that the Debtor's ability to terminate the Trust is the functional equivalent of revocation. In *George v. Kitchens by Rice Bros.*, 665 F.2d 7 (1st Cir.1981), the First Circuit determined that the debtor in her chapter XIII case claimed equitable title to the trust property resided in her children, the trust beneficiaries, *id.* at 8, and did not include the trust *res* as property of the estate. The court concluded that "[i]n these circumstances, we agree that the real estate did not constitute 'property' of the plaintiff within the meaning of the Bankruptcy Act." *Id.* In *Markham v. Fay*, 74 F.3d 1347, 1360 (1st Cir. 1996), the court stated "*George* remains a correct interpretation of Massachusetts law where, as in that case, *the only power reserved by the settlor, who was also the trustee but not a beneficiary, was the power to revoke.*" (emphasis supplied).

This Court finds that *George* is distinguishable from the instant case for two reasons. In the first place, the Debtor retained, in addition to the power to terminate the Trust as settlor, the power to alter and amend the Trust. Secondly, this Court's review of the holding in *George* compels the conclusion that it may be limited to circumstances where a debtor obtains a discharge based upon the exclusion of the trust property from her bankruptcy estate and then claims the benefit that would have resulted had the trust *res* been made available for distribution to creditors. The First Circuit, without mentioning judicial estoppel, appears to suggest that having obtained a benefit from the

---

**6.** In *Beatrice*, the bankruptcy appellate panel observed:

While those two terms may have distinct legal definitions, a review by the Panel reveals that they are used interchangeably within the realm of trust law. *See, e.g.,* Restatement (Second) of Law of Trusts, Chapter 10, §§ 330, .331 (1959) and Restatement (Third) of the Law of Trusts, Part 5, Chapter 13, § 63 (Tentative Draft No. 3, 2001), regarding the modification and termination of trusts. Specifically, the term "revocation" is used while referring to the powers of settlors, while "termination" is used while referring to the powers of trustees, beneficiaries and third parties. In fact, this would indicate that any distinction between "revocation" and "termination" is further blurred when, as here, the settlor and trustee are the same person. 296 B.R. at 581. Notably, in the Trust at issue here, the term "termination" is used with reference to the settlors' power.

exclusion of the trust property from her bankruptcy estate, the debtor could not post-discharge assert that the property was part of her bankruptcy estate and protected by the discharge injunction, particularly where the creditor was seeking recovery only from the trust *res*.

■ *Markham* is instructive with respect to the second issue raised by the Debtor, namely that the interests of her two children, the beneficiaries of the Trust, have vested. In *Markham* the court observed the following:

> Under Massachusetts law, whether a right in a trust has vested depends on "whether, in substance, the interest is sufficiently established to constitute an interest or right which has accrued to its holder." *New England Merchants Nat'l Bank v. Groswold,* 387 Mass. 822, 444 N.E.2d 359, 363 (1983). That an interest is "subject only to total or partial defeat by biological events" does not make it inchoate. *Id.* Thus, a beneficiary's right to receive part of the trust property that depends only on his or her survival until the death of other persons is a vested property right. *See Id.; Billings v. Fowler,* 361 Mass. 230, 279 N.E.2d 906, 908 (1972); *Whiteside v. Merchants' Nat'l Bank,* 284 Mass. 165, 187 N.E. 706, 709 (1933); *Alexander v. McPeck,* 189 Mass. 34, 75 N.E. 88, 92 (1905). *But where the right depends on the exercise or non-exercise of powers held by another, the beneficiary's right does not vest until the person holding the powers can no longer exercise them. See Reiser,* 389 N.E.2d at 770 (remainder interests of beneficiaries became vested upon death of settlor because his powers to amend or revoke the trust and direct payments from it died with him); *Old Colony Trust Co. v. Clemons,* 332 Mass. 535, 126 N.E.2d 193 (1955) (rights of remainder beneficiaries did not vest

until settlor's death where he had the right to revoke the trust or change beneficiaries). Any right in Fay's sons or sister to receive part of the trust property is not contingent on a mere biological event, but on whether or not Fay exercises her power to amend or revoke the trusts, and on to whom and in what amounts she distributes income and principal while the trust continues. Their interests therefore are not vested.

74 F.3d at 1359 (emphasis supplied). As in *Markham,* this Court finds that the rights of the beneficiaries have not vested because the Debtor could alter, amend or terminate the Trust. The Debtor retained the right to amend the Trust document, eliminating the requirement that both she and her husband sign an instrument terminating the Trust, and she could alter Article II of the Trust to name herself a beneficiary or to change or eliminate beneficiaries.

The Debtor's treatment of the Trust property as her own, coupled with the provisions of the Trust, compel the conclusion that the Trust *res* is property of the Debtor's bankruptcy estate.

### 2. Count XIII

Section 549 provides in relevant part: "[e]xcept as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a). The Trustee seeks the recovery of $19,000.00 from the Debtor on the ground that her withdrawal of that sum from the Fidelity account was unauthorized.

■■ In *Kelley v. Citizens Bank (In re Russell),* 227 B.R. 196 (Bankr.M.D.Ga. 1998), the court observed: " 'Under

[§ 549(a)], a four-part inquiry is raised: (1) whether a transfer of property occurred; (2) whether the property was property of the estate; (3) whether the transfer occurred after the commencement of the case; and (4) whether the transfer was authorized by the court or the Bankruptcy Code.'" 227 B.R. at 198 (quoting *Hoagland v. Edward Hines Lumber Co. (In re LWMcK Corp.)*, 196 B.R. 421, 423 (Bankr.S.D.Ill.1996)). The Court finds that the Trustee has satisfied each and every one of these elements. The Court also observes, that while the Debtor was not enjoined from making withdrawals from the Fidelity account, the Trustee filed her motion seeking a Rule 2004 examination and the production of documents on January 2, 2002, approximately one month before the Debtor made the first postpetition withdrawal of $1,200.00 from that account. The Court takes judicial notice of the Trustee's motion in which she sought information about and the production of documents concerning the Trust. Accordingly, the Debtor was on notice that a potential claim existed with respect to the equitable interest in the Trust.

## VI. CONCLUSION

In accordance with the foregoing, the Court grants the Trustee's Motion for Partial Summary Judgment and denies the Debtor's Cross–Motion for Partial Summary Judgment.