**In re Jane A. TOUGAS, Debtor**

**Lynne F. Riley, Chapter 7 Trustee of the Estate of Jane A. Tougas, Plaintiff**

**v.**

**Jane A. Tougas, Individually and as Trustee of the Tougas Family Realty Trust and George C. Tougas, Jr., Defendants, and**

**Fidelity Distributors Corp., d/b/a Fidelity Investments, Equitable Defendant.**

**Bankruptcy No. 01–17743 JNF. Adversary No. 02–01154.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 9, 2006.

Leonard M. Frisoli, Jr., Frisoli & Associates, Cambridge, MA, for Debtor.

M. Ellen Carpenter, Roach & Carpenter, P.C., Boston, MA, for Plaintiff.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matters before the Court are Counts VII and VIII with respect the Complaint filed by Lynne F. Riley, Chapter 7 Trustee of the Estate of Jane A. Tougas, the Debtor. Through these Counts, the Trustee seeks denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(6), for the Debtor's alleged refusal and failure to produce documents pursuant to the allowance of the "Trustee's Motion for Leave to Examine Debtor Jane A. Tougas pursuant to Bankruptcy Rule 2002(a) and for Production of Documents" (the "Motion for Production of Documents") and for her alleged unjustifiable failure to keep or maintain records from which her financial transactions may be ascertained.

The Court conducted a trial on October 17, 2006 at which the Debtor and the Trustee testified and 17 exhibits were introduced in evidence.

The Court previously granted the Trustee's Motion for Partial Summary Judgment through which the Trustee sought the following relief: 1) a declaration that certain property held by Jane A. Tougas (the "Debtor"), individually or as Trustee of the Tougas Family Realty Trust ("Trust"), is property of the bankruptcy estate pursuant to 11 U.S.C. § 541; 2) alternatively, a declaration that the Trust is a sham or straw Trust because of the Debtor's pervasive control over the Trust, rendering the Trust *res* property of the Debtor's bankruptcy estate; 3) a judgment requiring turnover of Trust property in an account at Fidelity Investments ("Fidelity") for the benefit of the estate; and 4) the avoidance and recovery, pursuant to 11 U.S.C. § 549(a), of $19,000.00 in unauthorized post-petition withdrawals by the Debtor from the Fidelity account, the proceeds of which comprised part of the Trust *res*.

## II. FACTS

The Court incorporates by reference the findings made in the Memorandum grant-

ing the Trustee's Motion for Partial Summary Judgment. *See Riley v. Tougas (In re Tougas),* 338 B.R. 164 (Bankr.D.Mass. 2006).

The Debtor filed a voluntary Chapter 7 petition on October 5, 2001. She did not list an interest in real property on Schedule A. On Schedule B–Personal Property, she disclosed that she was Trustee of the Tougas Family Realty Trust, adding that she was the Trustee only, that she had "no equitable interest" in the Trust, that the value of the Trust was $53,000.00, and that the Trust was excluded from property of the estate under 11 U.S.C. § 541. On Schedule F–Creditors Holding Unsecured Nonpriority Claims, she listed debts totaling $49,585.00, including an obligation to George Tougas and Jacanta [sic] Tougas in the sum of $10,000.00. She described this debt as follows: "borrowed money from trust with authorization of beneficiaries to pay legal fees for law suit by Wareham Community Dev. Authority & to pay accountant fees and taxes for trust."

On Schedules I and J, Current Income and Expenses of Individual Debtor(s), the Debtor disclosed that she is employed as a teacher's aide at the Old Rochester Regional School District earning net monthly income of $1,075.80 and incurring monthly expenses of $1,345.00. At the present time, the Debtor still is employed at the Old Rochester Regional School District, and she also works as a nurse's aide for patients suffering from dementia.

The Debtor was the original and sole Trustee of the Trust pursuant to a declaration of trust, dated August 8, 1991, and recorded in the Plymouth County Registry District of the Land Court. The Debtor and her late husband, George C. Tougas, Sr., were the settlors of the Trust. George C. Tougas, Sr. committed suicide on August 8, 1996. According to the Schedule of Beneficiaries of the Trust, dated August 8, 1991, upon the death of George C. Tougas, Sr., the living issue of the Debtor and George C. Tougas, Sr. became the beneficiaries of the Trust. The Debtor's children, George Tougas, Jr. and Jacante Tougas, are the only living issue of the Debtor and George C. Tougas, Sr.

By deed dated August 8, 1991, the Debtor and George C. Tougas, Sr. transferred title to their residence, located at 18 Cove Circle, Marion, Massachusetts, which they owned as tenants by the entirety, to the Trust for nominal consideration. Approximately seven years later, and two years after her husband's death, the Debtor sold the Trust property for $390,000.00. The net proceeds of the sale were eventually deposited into an account, number Z31–067342, which was in the Debtor's name, at Fidelity. The Debtor was the only person authorized to withdraw funds from the Fidelity account.

The Debtor filed an individual, federal income tax return for 1998 in which she personally claimed a capital gains exclusion in the sum of $250,000.00 for the profit from the sale of the Trust property. The Debtor also reported income from the Trust on her individual tax returns for 1998 and 1999.

By letter dated March 29, 2000, the Debtor asked Fidelity to change the name on her account from Jane A. Tougas to "Tougas Family Realty Trust." The Trust filed a fiduciary return in 2001, the year in which the Debtor filed a Chapter 7 petition.

On January 2, 2002, approximately three months after the Debtor filed her voluntary Chapter 7 petition, the Trustee filed a Motion for Production of Documents. On the same day, the Trustee also filed a Motion for 60–Day Extension of Time to Object to Debtor's Discharge and/or Dis-

chargeability of Debts in which she requested an extension of time to March 8, 2002 within which to file a complaint under 11 U.S.C. §§ 523, 727. On March 4, 2002, she filed an Assented-to Motion for Second 60–Day Extension of Time to Object to Debtor's Discharge, requesting a further extension to May 7, 2002. The Trustee filed the instant Complaint on May 6, 2002, which, among its 13 counts, contains Counts VII and VIII, now pending, through which the Trustee seeks to deny the Debtor a discharge.[1]

The Debtor's Schedules I and J reflected that her income from her job as a teacher's aide is insufficient to satisfy in full her regular monthly living expenses. Immediately prior to the commencement of the Debtor's bankruptcy estate, the Trust *res* totaled $44,941.75. On May 10, 2002, this Court issued a preliminary injunction, and, on or about May 15, 2002, Fidelity "froze" the Debtor's account. As of May 31, 2002, the Trust *res* in the Fidelity Account was $25,077.90. The Debtor made post-petition withdrawals from the Fidelity account which she used for living expenses and to pay for her daughter's wedding. The Debtor withdrew a total of $19,000.00 after the commencement of her bankruptcy case.

The Trustee conducted an examination of the Debtor on February 12, 2002 and April 30, 2002. At the conclusion of the Rule 2002 examination, the following colloquy took place between the Debtor and counsel to the Chapter 7 Trustee:

> Q. Mrs. Tougas ... the notice that we marked as Exhibit 1 did call for canceled checks and the check statements, and so what I am going to do is request that you provide us with copies of the Citizens account statements, canceled checks, the Fidelity account statements, canceled checks—
>
> A. I apologize for that, I though you wanted the most latest [sic]. I can call them.
>
> Q. What I am going to do is mark the two Fidelity statements as exhibits. I appreciate the fact you produced more than that, and we pretty well described, I think for the record what you produced, but we have referred to these, so before we go off the record, I am going to mark those as the next two exhibits, and the period of time that we're looking for is 1997 to date, so we need you to go back through your records.
>
> A. I am not sure I have, I will be honest, I do not have checks back to there. I probably have, I don't know, I will do the best, I will do the best I can, but I can guarantee that I do not have checks back to '97.
>
> Q. How far back do you think you have checks.?
>
> A. Probably maybe a year, eighteen months. I will go back and get everything that I can.
>
> \* \* \* \* \* \*
>
> Q. And your 2000 tax returns.
>
> A. Yes, I will get that to you as well.

The Debtor failed to produce her Citizens Bank statements and canceled checks, as well as her 2000 federal income tax return. At trial, she testified that she produced all the documents she had in her possession and that she assumed that the Citizens Bank records and 2000 tax return were not needed because she was not in-

---

1. The Trustee entered into a Settlement Agreement with George C. Tougas, Jr. with respect to Counts IV, V, VI, X and XI, and, as noted above, the Court granted the Trustee partial summary judgment with respect to Counts I, II, III, and XIII of her Complaint. Counts IX and XII pertained to injunctive relief which was granted pursuant to the Trustee's Motion on May 10, 2002.

formed by either her attorney or the Trustee that they were required to be produced. Additionally, she testified that she failed to comprehend that her failure to produce those records was the subject of the trial conducted on October 17, 2006. In one fashion or another, the Debtor stated the following at least nineteen times during her testimony:

> I sent every single thing I had in: my tax returns that had the Citizens Bank information on it [sic]; every single thing that I sent that I had that I had saved to send to the accountant; the end of the year statement that they send you. I sent all of that in to Mr. Frisoli with my tax returns. So everything I had came in. So I did do what I thought I was supposed to do by sending all of that in.

> \*　　\*　　\*　　\*　　\*　　\*

> ...[A]ll I can tell you is all my Fidelity accounts, all my Citizen Bank accounts, everything I had, including my tax statements, I sent every single thing in. And I did not realize that you needed more than that. And I apologize for that because I apparently don't understand any of this. But I assumed— which is wrong— that you had everything that you needed, and if you needed more, I would be notified, hey, I need the Citizen Bank statements or the Fidelity Bank [sic]. But I'm assuming, because you took— or the Fidelity was frozen or whatever. But all those accounts were open for you to get, or Mr. Frisoli to get, including Citizens Bank. It wasn't that they were being hidden because there would be no need to do that.

The Trustee's counsel sent the Debtor's attorney a letter on April 17, 2002, advising him to "advise Ms. Tougas that she must produce the documents on the list attached to the original Notice of Rule 2004 Exam...." At no time did the Trus-

tee file a Motion to Compel the Debtor to produce the missing records.

The Trustee testified that she needed the missing records from Citizens to evaluate potentially avoidable transactions and transfers made within one year of the filing of the Debtor's bankruptcy petition. Nevertheless, she stated that she made no attempt to subpoena the records directly from Citizens or from the Debtor's accountant because "the Debtor has a duty to produce the records, and the Debtor did not produce the records."

The Debtor testified truthfully about her understanding of her duties and obligations to produce records. She apologized for her failure to produce the documents, noting that she has moved six times since the death of her husband in an effort to avoid higher rentals due to seasonal fluctuations in the Marion/Mattapoisett area.

The Debtor's attorney, who was present at the Rule 2004 examination, and to whom she sent the documents in her possession, did not follow-up to make sure that *all* the records sought by the Trustee were produced. As noted above, the Chapter 7 Trustee did not file a motion to compel production of the missing documents. The Court questioned the Debtor's counsel, as an officer of the Court, as to what steps he took to follow-up on the Debtor's representations at the Rule 2004 examination that she would contact Citizen's Bank and produce records and the 2000 tax return. He stated the following:

> We had a meeting with the Debtor and her son, George Tougas, and we talked about getting documents. And George Tougas had his own attorney, and I was representing Ms. Tougas. And at that point, Your Honor, my client was being treated for breast cancer for well over a year. The case subsided for awhile, and

when it fired back up, the fight was about the boat. And her cancer continued again. Then the fight was about the Trust.

\*   \*   \*   \*   \*   \*

I didn't take any action at that time, Your Honor. And I was never requested to take any action. . . . I didn't get a formal discovery response request, a letter, an e-mail, a phone call. . . .

## III. DISCUSSION

Section 727 provides in relevant part the following:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . .

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . . .

11 U.S.C. § 727(a)(3) and (6).

■ The denial of a discharge is the harshest sanction the Court can impose on a Chapter 7 debtor. It would be particularly harsh in the Debtor's case as her earning capacity is such that it would be unlikely that she could satisfy the claims of her creditors if her discharge were denied. The Trustee has succeeded in obtaining a declaration that the property held in the Tougas Family Realty Trust is property of the Debtor's bankruptcy estate, and the Trustee has recovered a judgment in the sum of $19,000 against the Debtor for unauthorized post-petition withdrawals from the Trust account at Fidelity Investments, as well as approximately $15,000 from the Debtor's son, George C. Tougas, Jr., in settlement of her claims with respect to a 41' sailboat which the Debtor transferred to him in 2000 after her husband's death.

Thus, the estate is not without assets to satisfy, at least in part, the claims of the Debtor's creditors.

■ The Court finds that the Trustee did not produce evidence, and thus failed to satisfy her burden of proof under 11 U.S.C. § 727(a)(3), with respect to the Debtor's purported concealment, destruction or mutilation of books and records from which her financial condition could be ascertained. The Trustee complained about the Debtor's failure to produce her bank statements and canceled checks from Citizens Bank and her 2000 tax return and rightfully pointed out that it was the Debtor's duty to produce documents so that she could ascertain whether fraudulent transfers or preferences took place. There was no evidence that the Debtor concealed or destroyed the records, which the Trustee could have been obtained by serving a motion for a 2004 examination and request for production of documents on Citizens Bank and the Debtor's accountant. The Trustee knew where to find them and had a duty to investigate potential preference and fraudulent transfers claims; she chose instead to limit that investigation and to seek an order denying the Debtor a discharge, relying upon the Debtor's testimony at her Rule 2004 examination that she would contact Citizens Bank. Now, the bar date for bringing preference and fraudulent conveyance claims has passed. *See* 11 U.S.C. 546(a).

With respect to the Debtor's failure to produce the documents set forth in the Trustee's Motion for Production of Documents, the Debtor, admittedly, failed to produce bank statements and canceled checks from her account at Citizens Bank, as well as a tax return. Accordingly, she did not obey a lawful order other court. The issue is whether her failure to obey constituted a "refusal" for purposes of § 727(a)(6).

The Bankruptcy Code does not define "refused" or "refusal." As the court noted in *Gillman v. Green (In re Green)*, 335 B.R. 181 (Bankr.D.Utah 2005), "[w]here a term is not give a special definition in a statute, courts must interpret statutes according to their clear and ordinary meaning." *Id.* at 183 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). "Refuse" is defined in *Black's Law Dictionary* as follows:

> To deny, decline, reject. "Fail" is distinguishable from "refuse" in that "refuse" involves an act of the will, while "fail" may be an act of inevitable necessity.

*Black's Law Dictionary* 1153 (5th ed.1979)(citing *Maestas v. Amer. Metal Co. of New Mexico*, 37 N.M. 203, 20 P.2d 924, 928 (1933)). Similarly, in *Green*, the court looked to the definition of "refusal" in *Black's Law Dictionary* [2] and stated:

> The import of this definition is that § 727(a)(6)(A) requires a plaintiff to show more than a mere failure to obey a lawful court order. The plaintiff must show some degree of volition or wilfulness on the part of the debtor in failing to comply with the order.

335 B.R. at 184. The Utah bankruptcy court relied upon an unpublished decision of the United States Court of Appeals for the Tenth Circuit, *Martinez v. Los Alamos Nat'l Bank (In re Martinez)*, 126 Fed. Appx. 890, 896 (2005), in which the Circuit Court stated: "[t]he word 'refuse' in the context of § 727(a)(6), 'requires the Court to go further than to simply find that a debtor failed to comply with a discovery request. Rather, it must find that the disobedience was willful or intentional.' " 126 Fed.Appx. at 896 (quoting *D'Agnese v. Cotsibas*, 262 B.R. 182, 186 (Bankr.D.N.H. 2001)). *See also Law Offices of Dominic J. Salfi v. Prevatt (In re Prevatt)*, 261 B.R. 54, 60–61 (Bankr.M.D.Fla.2000); *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 349 (Bankr.E.D.Mich.1999).

The Debtor testified truthfully that she thought she had complied sufficiently with the Trustee's requests, adding that she had nothing to hide. She further testified that she was under the impression that the Trustee had all the records she needed. The Court cannot ignore the mitigating circumstances outlined by the Debtor and her counsel, including her illness, frequent household moves, and the absence of clear instructions from her counsel to produce the missing records by a date certain. The Court finds that, had the Debtor been fully cognizant of the ramifications of a deliberate failure to abide by the Court order of January 4, 2002, she would have made every effort to obtain the documents. Under the circumstances, the Court concludes that the Debtor's failure to produce the missing bank records and tax return was the result of inattention and dilatoriness. The Debtor did not act willfully or intentionally in failing to produce the records sought by the Trustee. Accordingly, the Court finds that the Trustee failed to sustain her burden under 11 U.S.C. § 727(a)(6)(A).

## VI. CONCLUSION

In view of the foregoing, the Court shall enter judgment in favor of the Debtor and

---

**2.** That definition provides in part: "In the latter sense, the word [refusal] is often coupled with 'neglect,' as if a party shall 'neglect or refuse' to pay a tax, file an official bond, obey an order of court, etc. But 'neglect' signifies a mere omission of a duty, which may happen through inattention, dilatoriness, mistake, or inability to perform, while 'refusal' implies the positive denial of an application or command, or at least a mental determination not to comply." *Black's Law Dictionary* 1152 (5th ed.1979).

against the Trustee with respect to Counts VII and VIII.